In re the MARRIAGE OF Yvonne
M. WESSELS and James V.
Wessels.

Upon the Petition of Yvonne
M. Wessels, Appellee,

And Concerning James V.
Wessels, Appellant.

No. 93–1892.

Supreme Court of Iowa.

Nov. 22, 1995.

As Amended on Denial of Rehearing
Dec. 14, 1995.

Harlan M. Hockett and Joseph G. Bertogli, Des Moines, for appellant.

Rod Powell of Black, Goldman & Powell, P.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, LAVORATO, and SNELL, JJ.

HARRIS, Justice.

Can rehabilitative alimony, set to terminate at a given time, be extended and made permanent by reason of unforeseen changed circumstances? In extreme situations such as those presented here, the trial court thought the answer is yes and we agree. Can alimony payments be ordered held in trust against the wishes of a payee? The trial court thought the answer is yes but we disagree. Both parties appeal from a trial court ruling upon this application to modify a dissolution of marriage decree. We affirm on the appeal and reverse on the cross-appeal.

James and Yvonne Wessels were married in 1966 while he was a medical student and she was a nursing student. After receiving her degree in 1968 Yvonne worked to help support the couple while James completed medical school. After graduating from medical school James practiced at several army bases as part of his military service. Yvonne continued to work until the birth of a son in 1970 and a daughter a year later. The parties then decided she would fulfill the role of the traditional homemaker and take care of the children and family while her husband pursued his medical career. Both children are now grown, although a conservatorship has been established for the daughter due to her learning disability. James serves as the conservator.

The marriage eventually deteriorated, and in May 1986, after twenty-one years, the parties were granted a dissolution. The dissolution decree adopted the parties' stipulation which, among other things, provided that (1) James would pay Yvonne rehabilitative alimony in the amount of $3100 per month for a period of sixty months; (2) James would pay Yvonne $700 per month (up to a two-year maximum) if she attended a full-time, postgraduate program; and (3) Yvonne would make every reasonable effort to become self-sufficient. The language was carefully crafted to specify that the alimony was rehabilitative.[1]

1. The stipulation and agreement provided in pertinent part:

It is agreed and contemplated by the parties that the petitioner will commence immediately to position herself through education, training, and work experience to enter the work force with a full-time job at the earliest reasonable time. Petitioner acknowledges that the alimo-

At the time the dissolution stipulation and decree were drafted, Yvonne had already begun to experience psychiatric problems. She sought treatment from a psychiatrist beginning in 1985 and underwent extensive evaluation at a widely respected psychiatric clinic in 1986. She was diagnosed as suffering from major depression and chronic posttraumatic stress disorder.[2] Her psychiatric problems also caused her to have certain physical ailments, including reflux esophagitis, ulcers, hiatal hernia, chronic lower back pain, psoriasis, and Raynaud's disease.

Yvonne's life since the dissolution has gone into a drastic downward spiral. But only by hindsight, in view of what has transpired since entry of the decree, can it be said that it was unrealistic to hope she could become self-supporting. We are convinced, although James obviously feels otherwise, that her failure has not been for lack of effort. She attempted to enroll in college to pursue a master's degree in special education, and actually began classes in the fall term of 1987. She was however rejected from the masters' program due to inadequate undergraduate grades, and was subsequently forced from her studies due to a psychiatric episode that led to hospitalization.

Rather than returning to her studies, Yvonne entered the work force. Beginning in May 1988 she was employed for three months at a restaurant as a cashier and custodian, and later by a hospital where she worked as a nurse. Then, following a job-related injury, she was assigned to the hospital pharmacy. The hospital placed her on medical leave of absence in November of 1991 at the time of still another psychiatric hospitalization.

In all Yvonne has had twelve psychiatric hospitalizations since the dissolution and has been treated by several psychiatrists in the Des Moines area. Although her primary diagnosis of chronic posttraumatic stress disorder and depression has remained the same, her condition has badly deteriorated. She has been receiving social security disability benefits and long-term disability benefits from her employer. Her current treating psychiatrist states she is not currently capable of holding a job. It is the medical opinion of the physician who completed the medical portion of her disability application in 1991 that Yvonne cannot be rehabilitated and will never work again.

Yvonne continues to live in the comfortable family home she was awarded in the dissolution decree. Also residing there is a man with numerous physical ailments[3] who pays $300 monthly rent. Except for alimony Yvonne's only other income is $400 in monthly social security disability benefits and, at the time of hearing, $785[4] in monthly disability payments derived through Yvonne's hospital employment. In contrast James' professional career as an anesthesiologist has flourished. His income in 1993 was expected to reach $300,000. He also expected to receive an additional $100,000 in income that year from investments.

Under the dissolution decree the last payment of rehabilitative alimony was due in May 1992. On April 30, 1992, Yvonne filed her petition to modify the decree. She asserted that, because her health problems prevented her from obtaining employment as contemplated in the stipulation and agreement, rehabilitative alimony should be continued or converted into permanent alimony. She also requested assistance for her medical bills, and attorney's fees.

---

ny payments have been established at a present higher rate to allow her to complete her rehabilitation within the shortest reasonable period of time.

Petitioner acknowledges her responsibility for making every reasonable effort to obtain the education, training, and work experience contemplated by the parties and to obtain the same within the shortest reasonable period of time....

**2.** The posttraumatic stress disorder is said to have stemmed from an unusually disturbing

event that occurred when James was in military service.

**3.** The man is completely disabled and is blind. He is on oxygen and has lost a portion of his stomach and lungs. We reject James' suggestion of a romantic link between him and Yvonne. His only income is approximately $500 per month in social security disability payments.

**4.** The $785 monthly disability payments were scheduled to end in February 1994.

After trial on the merits the district court concluded "Yvonne's worsening psychiatric problems, the lack of health insurance benefits, her increased medical expenses, her unemployability, the increased financial resources of James and the reduced assets of Yvonne" constituted a significant change in circumstances warranting modification of the decree. The court ordered James to continue to pay alimony of $3100 per month to Yvonne until the death of either party or until otherwise ordered by the court. Due to Yvonne's inability to manage funds, however, the court ordered the alimony to be paid into a court-supervised trust for Yvonne's benefit. The court also ordered James to pay one-half of Yvonne's uninsured medical expenses and $10,000 of Yvonne's attorney's fees. It is from this judgment that James appeals, and Yvonne cross-appeals. This is an equitable proceeding under Iowa Code section 598.3 (1995) on which our review is de novo. Iowa R.App.P. 4.

■ I. James contends the trial court exceeded its authority in modifying the initial decree because rehabilitative alimony payable for a limited period cannot be extended and converted into traditional alimony. Notwithstanding the equitable nature of this proceeding, James' first contention presents a legal question on which our review is on error. *See In re Marriage of Gallagher,* 539 N.W.2d 479, 480 (Iowa 1995).

We have distinguished rehabilitative alimony from permanent alimony, explaining that the former was fashioned as a method of supporting an economically dependent spouse through a limited period of re-education or retraining following a dissolution, thereby creating opportunity and incentive for that spouse to become self-supporting. *In re Marriage of Francis,* 442 N.W.2d 59 (Iowa 1989). We noted:

> Because self sufficiency is the goal of rehabilitative alimony, the duration of such an award may be limited or extended depending on the realistic needs of the economically dependent spouse, tempered by the goal of facilitating the economic independence of the ex-spouse. As in the case of "traditional" alimony, payable for life so long as a spouse is incapable of self-sup-

port, a change in status ... may alter the support picture and warrant a modification.

*Id.* at 64 (citations omitted). We have held that alimony provided in a dissolution decree, even though terminated by a subsequent modification order, can thereafter be reinstated. *In re Marriage of Carlson,* 338 N.W.2d 136, 140–41 (Iowa 1983). It was important that the initial decree awarded some alimony because where no alimony is initially awarded the decree cannot be modified to allow any. *Id.* at 139. Finally, in *In re Marriage of Marshall,* 394 N.W.2d 392 (Iowa 1986), we held that, in extraordinary circumstances, a court holds the power under Iowa Code section 598.21(8) to modify a dissolution decree to reinstate alimony payments after the payor spouse had met his obligations under the initial decree, even though the period set for alimony payments in the original decree had expired. *Id.* at 397.

Under our cases there are some rare situations where, notwithstanding an agreement and decree to the contrary, later occurrences are so extreme in their nature as to render the initial understanding grossly unfair and therefore subject to change. We do not envision situations of this kind to be common; they will exist only when the subsequent changes demand that the original order cannot, in fairness and equity, continue to stand. The onset of cancer under the facts in *Marshall* is an example. We think Yvonne's deteriorating condition is another.

These holdings easily support the authority of the trial court here, on proper showing, to modify the initial decree. We say "easily support" because, unlike the facts in *Marshall,* here there was no gap between the ending of the alimony obligation under the initial decree and the application to modify. That is, Yvonne's application to modify, as previously mentioned, preceded the ending of the original obligation.

James' first challenge is without merit.

■ II. We next consider whether Yvonne has in fact demonstrated the unusual change of circumstances necessary to justify this extraordinary modification. Anyone

seeking modification of the dissolution decree holds the burden to establish entitlement by a preponderance of the evidence. *Mears v. Mears,* 213 N.W.2d 511, 515 (Iowa 1973). The changed circumstances must not have been in the contemplation of the court when the original decree was entered. *In re Marriage of Full,* 255 N.W.2d 153, 159 (Iowa 1977). The changes must be more or less permanent and continuous, not temporary. *Carlson,* 338 N.W.2d at 141. The initial decree is entered with a view to reasonable and ordinary changes that may be likely to occur. *Mears,* 213 N.W.2d at 514; *In re Marriage of Skiles,* 419 N.W.2d 586, 589 (Iowa App. 1987) (medical problems associated with the aging process are in contemplation and knowledge of trial court).

Without doubt the rehabilitative alimony was provided in the present case in the belief that, through additional education, training, and work experience Yvonne would be able to obtain a full-time job and become self-supporting. The decree also declared it was Yvonne's responsibility to make every reasonable effort to achieve this goal. Obviously Yvonne has not met the goal of self-sufficiency but we have already found she made a good-faith attempt to do so. We reject James' contention that her deteriorated condition is due to her own life style choices.

Yvonne is currently not capable of holding a job and we are persuaded she will not become able to do so. This permanent deteriorated condition is a material and substantial change not contemplated by the court at the time of the initial decree. And, most importantly, it qualifies as the sort of rare and unique change that demands the extraordinary relief Yvonne seeks. The trial court was correct in so finding.

III. Both James and Yvonne challenge the amount of alimony awarded in the modification, James on the claim it is too extensive and Yvonne on the claim it is too limited.

■■ Alimony is not an absolute right. *In re Marriage of Fleener,* 247 N.W.2d 219, 220 (Iowa 1976). In making or modifying an alimony award the trial court considers the factors set forth in Iowa Code section 598.21(3). Our review of the trial court's

modification of the dissolution decree is de novo. *In re Marriage of Wahlert,* 400 N.W.2d 557, 559 (Iowa 1987). The trial court nevertheless has reasonable discretion in passing upon the advisability or necessity of a dissolution decree provision. *Id.* at 560. On appeal we do not disturb the trial court's conclusion unless there has been a failure to do equity. *Id.*

■ On our de novo review we agree with the terms of the modification order. Some but not all of the specific contentions merit further discussion. James thinks the trial court erred by retroactively modifying the alimony provisions of the dissolution decree when it made the modification effective from the date Yvonne filed the petition to modify. He cites the recent case *In re Marriage of Phares,* 500 N.W.2d 76, 79 (Iowa App.1993) (discussing the effect of a 1990 amendment to Iowa Code section 598.21(8) which pertains to child support but not alimony) in support of this contention. James however misconstrues the holding in *Phares.* A review of *Phares* and the authority it cites reveals the following rule:

> [A] trial court act[s] properly when it terminate[s] ... alimony payments prospectively from the date of the filing of its opinion. For the court to do otherwise would constitute the divestment or nullification of final judgments that are due. This result, however, does not apply to modification proceedings where an increase in alimony ... is the issue. In those instances an increase, in the sound discretion of the trial court, may be made retroactive to the date of the filing of the application for modification. Although an anomaly is created, it may be justified on the theory that when there is an increase, the divestment of an accrued right does not take place.

*In re Marriage of Bonnette,* 431 N.W.2d 1, 5 (Iowa App.1988) (formulating the rule from an analysis of prior case law). Here there was neither an increase nor decrease in the alimony award, merely a continuation. Retroactive modification is inappropriate only when the level of alimony is decreased or terminated. The trial court acted appropri-

ately in making the extension of the alimony award effective from the date of filing of the petition for modification.

■ James contends the trial court lacked the power to require him to pay for half of Yvonne's uncovered medical expenses. We disagree, noting that Iowa Code section 598.21(8)(c) provides for modifications when there are "changes in the medical expenses of a party." It follows that a trial court has the power to order medical support, and we approve the order that he pay toward Yvonne's. *See In re Marriage of Luebbert*, 400 N.W.2d 80 (Iowa App.1986) (former husband required to pay former wife's health insurance benefits). James fears this requirement will enable Yvonne to accumulate astronomical medical bills solely to spite him, a fear we do not share. The fear overlooks the fact that Yvonne must pay for half of any uninsured medical expenses. This surely will provide enough incentive for Yvonne to refrain from incurring unnecessary medical expenses.

■ Both parties appeal from that part of the modification order that directed James to pay $10,000 toward Yvonne's $28,200 in accumulated attorney's fees. The court reasoned that Yvonne will have available those funds awarded as retroactive alimony to pay the remaining balance. Yvonne claims the award was inadequate while James claims the award was excessive.

■ Ordinarily an award of attorney's fees rests in the sound discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion. *Francis*, 442 N.W.2d at 67. We think the trial court correctly assessed the controlling factor (an award of attorney's fees depends upon the ability of the respective parties to pay, depending upon the financial circumstances and earnings of each). *In re Marriage of Williams*, 303 N.W.2d 160, 167 (Iowa 1981). We find no abuse.

■ IV. We turn finally to Yvonne's challenge to the provision of the modification decree subjecting alimony payments to a trust. Iowa Code section 598.21(1) allows the court to

protect and promote the best interests of children of the parties [to a dissolution action] by setting aside a portion of the property of the parties in a separate fund or conservatorship for the support, maintenance, education, and general welfare of the minor children.

*See Mason v. Hall*, 482 N.W.2d 919, 920–21 (Iowa 1992) (applying this provision in establishing a trust for child support). This statute however does not expressly grant the same authority with regard to alimony payments. We have to assume the exclusion of authority for alimony payments was deliberate. *Inclusio unius est exclusio alterius* (the mention of one is the exclusion of others). *In re Estate of Wilson*, 202 N.W.2d 41, 44 (Iowa 1972) (noting in the field of statutory construction legislative intent is expressed by inclusion as well as omission); *Barlow v. Midwest Roofing Co.*, 249 Iowa 1358, 1364, 92 N.W.2d 406, 409 (1958) (applying this well-known rule of construction). Neither do we find common law authority to impose a trust on alimony payments. Because the court lacked authority to impose a trust on the alimony payments we reverse on the cross-appeal.

**AFFIRMED ON THE APPEAL; REVERSED ON THE CROSS–APPEAL.**