# IN THE COURT OF APPEALS OF IOWA

No. 16-0200
Filed December 21, 2016

IN RE THE MARRIAGE OF KEVIN LEE ELLES
AND CAROLYN M. ELLES

Upon the Petition of
**KEVIN LEE ELLES,**
        Petitioner-Appellant,

**And Concerning
CAROLYN M. ELLES,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Dallas County, Martha L. Mertz,

Judge.


        Kevin Elles appeals from the district court's modification of the decree

dissolving his marriage to Carolyn Elles.  **AFFIRMED AS MODIFIED.**



        John P. Roehrick of Roehrick Law Firm, P.C., Des Moines, for appellant.

        Alexandra D. Frazier of McEnroe, Gotsdiner, Brewer, Steinbach &

Rothman, P.C., West Des Moines, for appellee.



        Heard by Vogel, P.J., and Tabor and Mullins, JJ.

**MULLINS, Judge.**

Kevin Elles appeals from the district court's modification of the decree dissolving his marriage to Carolyn Elles. He contends the district court should not have ordered him to pay $1200 per month in spousal support to Carolyn for a period of twenty years. Upon our de novo review, we affirm as modified.

## I.    Background Facts and Proceedings

Kevin and Carolyn's twenty-year marriage was dissolved in December 2014. The parties have two minor children. Pursuant to the parties' original stipulation and decree, they exercise joint legal and physical custody of their children.

On April 27, 2015, Carolyn filed a motion for hearing on temporary matters,[1] requesting an order setting a hearing to determine Kevin's spousal-support and child-support obligations. Subsequently, the parties stipulated Kevin would pay approximately $860 per month in child support to Carolyn and provide health, vision, and dental insurance for their children. On May 20, the court held a trial to modify the amount of spousal support.

At the time of the modification trial, Kevin was forty-six years old. During the pendency of the dissolution, Kevin had been laid off from his employment and remained unemployed until after entry of the decree. In February 2015, Kevin obtained employment earning a gross annual income of approximately $118,000. Additionally, Kevin was renting out the marital home he received pursuant to the property distribution of the stipulation and decree and receiving an additional net income of $400 per month or $4800 per year. Kevin testified

_____

[1] The court considered Carolyn's motion as a motion to modify the decree.

his monthly expenses were about $4598. Kevin also testified he anticipated paying for the oldest child's car insurance and already paid for the two children's cell phones and various school activities.

Carolyn was forty-three years old. She has bipolar disorder, has been on medications for treatment of the disorder since she was seventeen years old, has had frequent hospitalizations over the years, and has participated in electroconvulsive therapy (ECT) treatment. She has a bachelor's degree in early childhood education and a teaching certificate. Carolyn was a stay-at-home mother for ten years during the parties' marriage and later returned to work part time as a teacher in a local school district. At the time of the decree and subsequent modification trial, Carolyn was working as a daycare teacher earning a gross annual income of approximately $18,000.[2] Carolyn anticipated maintaining full-time employment despite her mental illness and stress levels so that she could receive health insurance through her employer. Carolyn testified her expenses were approximately $3438 per month and she was receiving assistance from her elderly parents in meeting those expenses. Carolyn testified, based on her income, she was receiving food stamps and the children received free lunches and free or discounted activities at school.

On August 27, the court entered an order modifying spousal support and requiring Kevin to pay $1200 per month to Carolyn until either party's death, Carolyn's remarriage, or Carolyn reaches the age of sixty-six and begins

---

[2] Toward the end of the parties' marriage, Carolyn fell and broke her ankle and went on short-term disability. It is unclear from the record when or for how long Carolyn was on disability for her ankle, but she was employed at the time of the decree and had returned to work at least by the time of the modification trial.

receiving Social Security benefits based upon Kevin's earnings. The court modified the duration of the spousal support, finding it was unlikely Carolyn would be able to support herself at the end of the ten-year period agreed to by the parties and it was unnecessary for her to have to return for a modification later. The court also ordered Kevin to pay $3000 toward Carolyn's attorney fees.

Kevin then filed a motion for expanded findings of fact and conclusions of law pursuant to Iowa Rule of Civil Procedure 1.904(2). The court held a hearing on the motion on October 13. On January 4, 2016, the court entered a ruling reducing the duration of the spousal support to twenty years after learning the length of the parties' marriage was only twenty years. Kevin appeals.

## II. Scope and Standard of Review

We review a district court's decision modifying a decree for dissolution of marriage de novo. *In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014); *see also* Iowa R. App. P. 6.907 ("Review in equity cases shall be de novo."). "We give weight to the findings of the district court, particularly concerning the credibility of witnesses; however, those findings are not binding upon us." *Sisson*, 843 N.W.2d at 870 (quoting *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013)). We will not disturb a district court's ruling on a modification unless that ruling failed to do equity. *Id.*

## III. Analysis

Kevin contends the district court should not have increased the number of years he is required to pay spousal support to Carolyn because the record does not contain evidence a substantial change in circumstances occurred and the

modification results in a failure to do equity. Additionally, Kevin asserts the district court's award of $1200 per month in spousal support was excessive.

### A. Duration

An order of the district court shows the parties appeared for trial on October 15, 2014, and "the parties resolved all issues before the testimony began. Agreement acknowledged on the record by the parties and approved by the court. The attorneys shall submit an approved consent decree within fifteen days." On December 17, the district court approved the decree, which shows the signatures of the attorneys for both parties indicating the decree was "approved as to form and content." Thus, the record clearly demonstrates the parties settled their disputes and recited their agreement in open court. The stipulated agreement was approved by an order entered by the trial judge, and was then documented in the drafting of the decree as approved by both counsel and by a different judge of the district court when it signed the decree.

Regarding the issue of spousal support, the parties' decree ordered:

[T]he Petitioner shall pay unto the Respondent the sum of One Dollar ($1.00) per month as alimony, commencing November 1, 2014 and continuing the first day of each month thereafter for a period of One Hundred Twenty (120) months. Said alimony shall be paid through the Office of the Clerk of the District Court in Adel, Dallas County, Iowa.

The decree further provided:

[T]he Court retains jurisdiction for the establishment of child support and alimony upon the re-employment of the Petitioner. The Court anticipates that there will be re-employment and change in the amount of income received/earned by both parties in the near future and earning capacity shall also be considered at that time. The re-employment or receipt of benefits by either party shall be deemed to be a substantial change in circumstances for purposes

of modification of alimony and/or child support. No mediation shall
be required before the filing of a modification.

Succinctly, the decree ordered spousal support in the amount of $1.00 "for a period of One Hundred Twenty (120) months." Any suggestion the court did not order spousal support for ten years, or that any court approval was merely casual, is negated by the entry of the decree.

"Provisions for the payment of support in a decree of dissolution of marriage are normally final as to the circumstances existing at the time." *Id.* However, "courts are permitted to 'modify child, spousal, or medical support orders when there is a substantial change in circumstances.'" *Id.* (citation omitted). "All relevant factors are considered in determining a substantial change in the circumstances, including changes in employment, income, earning capacity, health, and medical expenses of a party." *Id.*; *see also* Iowa Code § 598.21C(1) (2013). "Of course, the changed circumstances must be material and substantial, essentially permanent, and not within the contemplation of the court at the time of the decree." *Id.* at 870–71.

"The authority of courts to modify spousal support also includes the power to change the duration of the support from a finite period to an indefinite period." *Id.* at 871. But "the circumstances to support a modification of spousal support from a finite period to an indefinite period must be 'extraordinary' and render the original award grossly unfair." *Id.* (citation omitted). "The unique circumstances previously found to have supported this type of modification have included the unexpected onset of a medical condition by a party that rendered the expectation of self-support unrealistic." *Id.*; *see also id.* at 875 (holding former wife's

postdecree diagnosis of terminal cancer was a substantial change in circumstances justifying an increase in the duration from eight and a half years to life and the amount of former husband's spousal-support obligation); *In re Marriage of Wessels*, 542 N.W.2d 486, 489 (Iowa 1995) (concluding former wife's permanent, postdecree mental-health condition that made future employment unlikely supported a modification of rehabilitative spousal support—for a maximum of seven years—into permanent spousal support). Although *Sisson* and *Wessels* address changes from finite terms to indefinite terms, we find them persuasive when considering the increase in this case of ten years to twenty years, taking Carolyn to age sixty-three.

At the time the decree was entered in December 2014, Kevin was unemployed. In February 2015, Kevin was rehired by his former employer, and he promptly informed Carolyn of his re-employment. Carolyn moved to modify the spousal-support provision contained within the decree.

At the modification trial, both parties agreed Kevin should pay some amount of support to Carolyn for a period of ten years. At the start of the trial, the court acknowledged only the amount of spousal support was at issue because the parties had previously stipulated to the amount of child support. Referring to the original dissolution proceedings, the court stated: "The parties agreed on some issues, and those were approved by the Court. The remaining issues at this time, as I understand it, are spousal—the amount of spousal support and attorney's fees, which [are] requested by [Carolyn]." On direct examination by her attorney, Carolyn was asked whether the parties had "agreed that [she] would receive ten years of spousal support"; she responded

affirmatively. Carolyn was then asked whether the decree provided the court was to retain jurisdiction "to determine child support and the amount of spousal support when and if [Kevin] was rehired in a new position," to which she responded, "Yes." Carolyn did not request an increase in the duration of the spousal-support payments. Near the end of her direct examination, she said she was asking for $2500 per month in spousal support, and when asked, "And that's for the ten-year duration?"; she replied, "Yes."

The district court's initial modification ruling on August 27, 2015, made conclusions of law, showing clear reliance on principles governing initial spousal-support determinations, and concluded the support should be set at $1200 per month until Carolyn reaches the age of sixty-six years, dies, or remarries. The court based its ruling on the disparity between the parties' incomes and the fact that Carolyn was receiving food stamps and their children were on a free-lunch plan at school.

After Kevin filed a rule 1.904(2) motion, the court held a hearing and issued a new ruling and order, this time applying modification principles. The court noted that at the time it accepted the parties' original stipulation in October 2014, Carolyn was employed and earning an income, but it had anticipated a change in the amount of spousal support as well as a possible change in its duration if either party could establish a need. The court found Kevin had been unemployed at the time it had approved the parties' stipulation and at the time of the decree in December 2014, and thus, a substantial change in circumstances had occurred after Kevin was rehired and had begun earning a large salary. The court also noted that before the modification trial in May 2015, it had been

"unaware of the extent of [Carolyn's] illness or the nature of her treatments." The court found "the evidence during the modification trial established it is unrealistic to think Carolyn can ever support herself in a manner close to that enjoyed during the marriage. In that respect, the change is permanent and was not contemplated by the Court at the time of the decree." The court also relied on the fact Carolyn "had not worked full time outside the home during the marriage," she "ha[d] nowhere near the earning capacity of Kevin," and Kevin had "potential for increased earnings" while Carolyn did not. Ultimately, the court concluded Carolyn's mental-health condition justified a modification of the duration of Kevin's spousal-support obligation from the parties' stipulated ten years to twenty years because her "ability to be self-supporting at the end of ten years is unlikely."

The record shows Carolyn was diagnosed with bipolar disorder when she was seventeen years old and has been on medications to treat her condition since that time. Carolyn had undergone frequent hospitalizations and participated in one session of ECT treatment for her condition prior to the decree and did not present any evidence that she anticipated any changes to her current treatment plan or planned to participate in any more sessions of ECT treatment. Although Carolyn's condition is likely permanent, *it did not change* between the time the decree was entered and the time of the modification trial five months later. It was simply not "a circumstance beyond the contemplation of the parties at the time of the dissolution of the marriage." *Sisson*, 843 N.W.2d at 872.

Furthermore, Carolyn was working full time at the time of the decree and the modification trial and testified she planned to maintain full-time employment.

*See Wessels*, 542 N.W.2d at 490 (concluding former wife's deteriorating condition precluding her from working at anticipated levels was a substantial change in circumstances). Her condition did not require a change in her own employment during those five months. She also did not present any evidence she would not be self-supporting at the end of ten years or even that she would experience a decrease in her level of employment or earnings. *See In re Marriage of Olson*, 705 N.W.2d 312, 316 (Iowa 2005) ("Traditional alimony is 'payable for life or so long as a spouse is incapable of self-support.'" (quoting *In re Marriage of Francis*, 442 N.W.2d 59, 64 (Iowa 1989))). Based upon our review of the record, we do not find the circumstances of the parties since the time of the decree to be "extraordinary" so as to "render the original award [of spousal support for a period ten years] grossly unfair." *Sisson*, 843 N.W.2d at 871 (citation omitted); *see also In re Marriage of Sjulin*, 431 N.W.2d 773, 776 (Iowa 1988) ("Even if a substantial change is shown, we will not modify the terms of the decree unless its enforcement will be attended by a positive wrong or injustice as a result of changed conditions.").

The only change in circumstances from the time of the entry of the decree to the time of the modification trial was Kevin's employment income, of which both the increase and the approximate amount were anticipated. At the beginning of the hearing, the court identified the amount of spousal support as being the issue. Carolyn confirmed that in her testimony, and specifically confirmed her request for "the ten-year duration." The dissent in this case asserts we appear to make "an error-preservation analysis, though not labeling it as such." To the contrary, the recitation of these facts have nothing to do with

error preservation, but everything to do with facts that illustrate the plain understanding of the parties and the original trial court at the time the stipulation of the parties was approved and became part of the decree in this matter. It also has to do with effective trial management, application of principles of equity, and finality of judgments. It is a recognized trial-management tool to identify the issues to be heard at a hearing or trial. Doing so allows the court and the parties to focus the presentation of the evidence and arguments to the matters that are expected and anticipated. Although it is not unusual for new or different issues to present themselves in the course of a trial, that is not the case here. What is evident is the court and the parties believed the issue was the appropriate amount of monthly spousal support, not a change in the term. What changed is that after hearing the evidence, and without notice or opportunity to be heard, the district court decided it should not have approved the original stipulation and ordered the ten-year term. Instead, the court analyzed and ordered the term of twenty years as though it were an initial determination. It ignored its own decree which was final as to the term of years. Upon addressing Kevin's rule 1.904(2) motion, the court changed its analysis but reached the same conclusion, still relying on the basic notion of accomplishing a do-over.

Based on the record in this case, no one disputes that an award of spousal support was warranted. In fact, the parties stipulated at the dissolution trial that an award of spousal support for ten years was appropriate but the amount should be set after Kevin regained employment. We are not called upon in this appeal to determine whether the term of spousal support awarded in this case would have been proper if this were an initial determination by the district

court at the conclusion of the dissolution trial. The question before us is what the district court should have considered and concluded after the modification trial.

The dissent argues that because the court's dissolution decree retained jurisdiction for the "establishment" of alimony, the court had full authority to decide amount and duration. But the entire decree must be read together and in context, giving effect to all its provisions. Unless we write-out certain provisions of the decree as superfluous, the decree shows the intent of the parties and approval by the court of a term of spousal support of ten years, with the amount left to be determined after Kevin's re-employment and taking into consideration the income in the near future and earning capacity of each party at that time.

We acknowledge this case does not fit neatly into the modification schemes set forth in the case law and statutes. We do not have case law that splits sub-issue determinations (e.g., duration versus amount) when faced with a substantial change in circumstances as to one sub-issue (e.g., amount). Under the unique facts of this case, starting with the trial record[3] and running through entry of the decree and the commencement of the modification trial, we conclude the amount of spousal support was the only issue the district court should have considered.

Based upon the record before us, we conclude the increase in the duration of Kevin's spousal-support obligation from ten years to twenty years results in a failure to do equity. *See Sisson*, 843 N.W.2d at 870. We modify the court's decision accordingly.

---

[3] I acknowledge the concern of the special concurrence, but conclude the order entered by the court at the conclusion of the trial is adequate to support the determination in this case. In any event, it is the decree that controls the outcome.

### B. Amount

Kevin also claims the district court's order modifying the amount of spousal support to $1200 per month was excessive.

Shortly after the decree was entered, Kevin was rehired by his former employer. At the time of the modification trial, Kevin was forty-six years old. He testified he was earning $118,000 per year. He was also receiving an additional net income of $4800 per year for renting out the marital home. He testified his monthly expenses were approximately $4598.

Carolyn was forty-three years old. She was diagnosed with a mental illness as a teenager and has received treatment to manage her disorder since that time. At the time of the modification trial, Carolyn was working as a daycare teacher earning $18,000 per year. The record shows it is unlikely she will be able to increase her earnings in the future. Carolyn testified her expenses were approximately $3438 per month and she was receiving assistance from her elderly parents in order to make ends meet. Pursuant to a stipulation by the parties, Carolyn receives a monthly child-support payment from Kevin in the amount of $860. *See id.* 873 (considering former wife's receipt of monthly child-support payments from former husband when wife's monthly expenses included expenses incurred in caring for their children).

Upon our de novo review of the record, we find no reason to disturb the amount ordered in the modified decree. An award of monthly spousal support payments in the amount of $1200 is equitable. We affirm this portion of the district court's modification order.

**IV.     Conclusion**

Upon our de novo review of the record, we conclude the district court's decision modifying the decree and increasing the duration of Kevin's spousal-support obligation from ten to twenty years results in a failure to do equity.  We modify the court's decision to reduce the term to ten years.  We affirm the court's order requiring Kevin to pay to Carolyn $1200 per month in spousal support.

**AFFIRMED AS MODIFIED.**

Vogel, Presiding Judge, concurs specially; Tabor, Judge, concurs in part and dissents in part.

**VOGEL, Presiding Judge** (concurring specially).

While I agree with the majority in the resolution, I write separately to highlight one flaw with this record. After a reported hearing before the decretal court, there was no transcript in the record on appeal. At oral argument, the parties could not explain the absence of a transcript; yet, some record was created—albeit perhaps not fully transcribed—for the district court to quote from it in the ruling on Kevin's 1.904(2) motion in the modification proceeding:

> The Court, in approving the parties' original stipulation, stated:
> The Court specifically orders $1.00 per month spousal support from the respondent for the petitioner to be paid on or before the first of each month through the Dallas County Clerk of Court . . . . That will continue for a period of ten years, which is actually 120 months, . . . . That will commence November 1, 2014. At such time as it changes, if there is a need and it can be established that there is a need, that 120 months can either be extended or shortened. It depends on the circumstances, but the Court does find that the respondent at this time is employable—is, in fact, employed—and is earning an income to help support herself and her children.

Without that transcript, this court was open to speculation as to how much or how little the district court was originally apprised of Carolyn's medical condition. When the amount of spousal support was set upon Kevin's re-employment, the court had a full picture of Carolyn's needs and apparently made an initial finding as to both amount and duration of support. A full transcript of the initial hearing may well have assisted us in understanding why the district court fashioned its modification ruling to include duration. The lack of a transcript left us wondering what was "contemplated" by the decretal court. *See In re Marriage Wessels*, 542 N.W.2d 486, 490 (Iowa 1995) ("The changed circumstances must not have been in the contemplation of the court when the original decree was

entered."). Nonetheless, I agree a material and substantial change of circumstances was not established between the entry of the decree and the modification hearing that requires adjustment as to the duration of the spousal support, and therefore, I concur with the majority.

**TABOR, Judge** (concurring in part and dissenting in part).

I respectfully dissent from the majority's view that increasing the duration of Kevin's alimony obligation to Carolyn "results in a failure to do equity." I would affirm the district court's modification of the alimony award from one dollar per month for ten years[4] to $1200 per month for twenty years. The parties were married for twenty years, Carolyn spent a decade out of the workforce to raise the parties' children, Kevin is now earning six times more than Carolyn is earning, and Carolyn has a serious mental illness that limits her future economic prospects. Traditional alimony is equitable under these circumstances. *See In re Marriage of Gust*, 858 N.W.2d 402, 410–11 (Iowa 2015) (describing twenty years as "durational threshold" for awarding traditional alimony and looking to substantial disparity in earning capacities as key consideration).

The majority does not opine that Carolyn would have been undeserving of traditional alimony (or, more precisely, of the twenty years of payments ordered by the district court) if the award had been made in the original decree. Rather, the majority accepts Kevin's argument that "circumstances to support a modification of spousal support from a finite period to an indefinite period must be 'extraordinary' and render the original award grossly unfair." *See In re Marriage of Sisson*, 843 N.W.2d 866, 871 (Iowa 2014) (citing *Wessels*, 542 N.W.2d at 489). The majority's reliance on *Sisson* and *Wessels* is misplaced.[5]

---

[4] "It was important that the initial decree awarded some alimony because where no alimony is initially awarded the decree cannot be modified to allow any." *In re Marriage of Wessels*, 542 N.W.2d 486, 489 (Iowa 1995).

[5] The reference in *Wessels* to "extraordinary circumstances" is attributed to *In re Marriage of Marshall*, 394 N.W.2d 392, 397 (Iowa 1986), which held the district court had statutory authority to modify a dissolution decree to *reinstate* alimony payments even after payor spouse had met his obligations under the initial decree and the duration

First, it is inaccurate to say the district court changed the duration of Kevin's support obligation from a finite period to an indefinite period. The court's modification of duration was from ten years to twenty years. Twenty years is a definite period. *Cf. id.* at 870 (extending spousal support payments for remainder of ex-spouse's life); *Wessels*, 542 N.W.2d at 489 (ordering ex-husband to continue to pay alimony "until the death of either party or until otherwise ordered by the court").

Second and more substantively, in both *Wessels* and *Sisson*, the question was whether the party seeking to modify the dissolution decree, by replacing an award of rehabilitative alimony with traditional alimony, had demonstrated a substantial change of circumstances not within the court's contemplation at the time of the original decree necessary to justify the "extraordinary modification." *Sisson*, 843 N.W.2d at 871 (finding post-decree cancer diagnosis was substantial

---

specified in the initial decree had expired. *See Wessels*, 542 N.W.2d at 489 (stating holding in *Marshall* "easily supports" the *Wessels* court's authority to modify because "unlike the facts in *Marshall*, here there was no gap between the ending of the alimony obligation under the initial decree and the application to modify").

But the *Marshall* decision, in fact, did not require "a showing of extraordinary circumstances" to modify a finite alimony award. *See* 394 N.W.2d at 397 ("[W]e conclude the court retains the power to modify even a finite alimony award at any time when such an award was included in the initial decree. Any such modification is governed by [our statutes.] Decisions will rest within the sound discretion of the district court."). The dissent in *Marshall* was concerned about the stability of judgments, opining: "[I]t is when a potential modification would insert doubt into an otherwise definite provision of the decree that the concept of judicial stability is violated." *Id.* at 398 (Larson, J., dissenting). The stability of judgments is not undermined by extending the duration of alimony in the instant case because the language in this decree shows both the court ("the Court retains jurisdiction for the establishment of . . . alimony" without prior mediation) and the parties ("re-employment . . . shall be deemed to be a substantial change in circumstances for the purposes of modification of alimony") anticipated returning to court on the *alimony issue*. *See id.* at 399 ("More significantly, the decree in [*In re Marriage of Carlson*, 338 N.W.2d 136, 137–38 (Iowa 1983),] was itself indefinite, providing for alimony until further order of court. Reinstating alimony in [those] circumstances did not have the effect of destabilizing an alimony award; it was indefinite at the outset."). Similarly, the decree here was indefinite at the outset.

change in circumstances); *Wessels*, 542 N.W.2d at 489–90 (finding ex-wife's psychiatric problems, which she began experiencing before the dissolution, were substantial change in circumstances when such problems increased post-decree to the point where she was not able to become self-sufficient).

In this case, Carolyn had no burden to show a substantial change in circumstances to modify the alimony award. Because Kevin was not employed at the time of the decree, the district court approved a token alimony amount of one dollar per month for 120 months. In the language of the decree,[6] the court retained jurisdiction for the "establishment" of alimony when Kevin gained re-employment. The court specifically contemplated it would consider each party's income and "earning capacity" at that time. The decree "deemed" the re-employment or receipt of benefits by either party to be a substantial change in circumstances "for purposes of modification of alimony."

Despite this built-in modification provision, the majority reflects on Carolyn's long-standing diagnosis with bipolar disorder, her frequent hospitalizations and her treatment with electroconvulsive therapy, and concludes, citing *Sisson*, 843 N.W.2d at 872, that it was "simply not 'a circumstance beyond the contemplation of the parties at the time of the dissolution of marriage.'" While that conclusion is true, it makes no difference. Carolyn had no obligation to show

---

[6] The decree stated:

> [T]he Court retains jurisdiction for the establishment of child support and alimony upon the re-employment of the Petitioner. The Court anticipates that there will be re-employment and change in the amount of income received/earned by both parties in the near future and earning capacity shall also be considered at that time. The re-employment or receipt of benefits by either party shall be deemed to be a substantial change in circumstances for purposes of modification of alimony and/or child support. No mediation shall be required before the filing of a modification.

a substantial change in circumstance beyond the parties' contemplation when the decree was entered. Under the express language of the decree, the matter automatically returned to the court when Kevin started his new job.

Kevin contends the parties only anticipated replacing the one-dollar placeholder amount, not the length of time he was required to pay. His contention is not supported by the language of the decree or any record provided from the original dissolution trial. Kevin, as appellant, bears the burden of presenting to the appellate court a record sufficient to show error on the part of the district court. *See In re Marriage of Ricklefs*, 726 N.W.2d 359, 362 (Iowa 2007) ("[T]he lack of a record . . . precludes us and should have precluded the court of appeals from deciding this issue. The appellant has the duty to provide a record on appeal affirmatively disclosing the alleged error relied upon."); *In re F.W.S.*, 698 N.W.2d 134, 135 (Iowa 2005) ("The court may not speculate as to what took place or predicate error on such speculation."). Moreover, even if the parties had stipulated to the ten-year duration of spousal support, their stipulation was not binding on the district court; if it was unfair or contrary to law, the court could reject the stipulation. *See In re Marriage of Ask*, 551 N.W.2d 643, 646 (Iowa 1996).

In addition to its misplaced reliance on *Sisson*, the majority sets out what appears to be an error-preservation analysis, though not labeling it as such.[7]

---

[7] The majority invokes the concepts of effective trial management, equity principles, and finality of judgments, contending the district court "ignored its own decree which was final as to the term of years." I respectfully disagree. The decree's order for spousal support was no more final as to duration of 120 months than it was to the amount of one dollar. The parties anticipated returning to the court when Kevin regained employment to determine his overall spousal support obligation, which encompasses both amount and duration.

The majority seems to suggest the twenty-year duration was improper because Carolyn did not request a longer period of alimony at the May 20, 2015 modification hearing. The majority points out that at the start of the hearing "the court acknowledged only the amount of spousal support was at issue because the parties previously stipulated to the amount of child support." It is true the court referenced "the amount of spousal support," but in doing so the court was not contrasting a monthly payment with the overall duration of the alimony obligation; instead it was contrasting the unsettled issue of spousal support from the settled issue of child support. The majority also points out Carolyn testified at the modification hearing that the parties agreed she would receive ten years of support and that she did not ask for an increase in the duration. But, as the majority acknowledges, Carolyn requested support in the amount of $2500 per month for ten years (an overall obligation of $300,000), a request higher than the amount ordered by the district court, $1200 per month for twenty years (an overall obligation of $288,000).

We routinely consider the interplay between the amount and duration of spousal support awards. *See, e.g.*, *In re Marriage of Witherly*, 867 N.W.2d 856, 859 (Iowa Ct. App. 2015) (assessing the "propriety of the amount and duration of the award" under the factors in Iowa Code section 598.21A (2013)). To hold that a district court properly considering modification of alimony was limited to deciding the monthly amount and prohibited from changing the duration marks an artificial constraint not anticipated by the statute or case law. *See id.*

Furthermore, at the hearing on Kevin's rule 1.904(2) motion, his counsel acknowledged no formal record was made on the issue of duration when the

decree was entered. Counsel's best recollection was of the court casually saying: "Okay. We're going to go ten years." Similarly, the court did not recall the parties reaching an agreement on duration. In discussing the parties' expectations, the court offered a pair of alternatives: "One, everybody thought it was 120 months; or two, in this case, Carolyn thought, well, . . . if they're modifying spousal support, that could include the duration." Ultimately, the district court believed it had the equitable power to modify the duration of the spousal support. I agree. Trial courts are "in the best position to balance the parties' needs, and we should intervene on appeal only where there is a failure to do equity." *Gust*, 858 N.W.2d at 416. Because the twenty-year award did equity between these parties, I disagree with the majority's decision to intervene.