# IN THE COURT OF APPEALS OF IOWA

No. 16-1947
Filed September 13, 2017

IN RE THE MARRIAGE OF NATALIE RAE HAMMER
AND CHRISTOPHER MICHAEL HOLLAND

Upon the Petition of
NATALIE RAE HAMMER,
      Petitioner-Appellee/Cross-Appellant,

And Concerning
CHRISTOPHER MICHAEL HOLLAND,
      Respondent-Appellant/Cross-Appellee.

_____

Appeal from the Iowa District Court for Winnebago County, DeDra L. Schroeder, Judge.

A father appeals the denial of his petition to modify child support and a mother appeals the court's denial of her request for trial attorney fees. **AFFIRMED ON BOTH APPEALS.**

Sarah A. Reindl of Reindl Law Firm, Mason City, for appellant/cross-appellee.

Becky S. Knutson of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for appellee/cross-appellant.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**VOGEL, Presiding Judge.**

Christopher Holland (Chris) appeals the modification court's decision to deny modification of the dissolution of marriage decree between him and Natalie Hammer. Chris asserts because the initial stipulated decree failed to state how child support was calculated it cannot serve as the basis in future modifications. He further asserts the modification court should have found child support anew. On cross-appeal, Natalie requests we reverse the modification court's denial of attorney fees and further seeks appellate attorney fees. Because the modification court appropriately considered the child support amount as set forth in the decree, and Chris failed to show a substantial change of circumstances, we affirm. We also affirm the modification court's denial of attorney fees for Natalie, but we award her $5000 fees on appeal.

## I. Backgrounds Facts and Proceedings

Chris and Natalie's marriage in 1999 produced four children, all of whom are still minors. A stipulation and decree of dissolution of marriage were filed on April 27, 2015, granting the parties joint legal and physical custody of the children, with Natalie having somewhat more parenting time than Chris. Chris was responsible for paying Natalie $2200 each month in child support. The stipulation provided uncovered medical expenses "shall be paid by the parents in proportion to their respective net incomes." Accordingly, Chris was responsible for the children's health insurance and eighty-five percent of uncovered medical expenses, while Natalie was responsible for fifteen percent.

Not directly related to child support, but clearly contemplated by the parties, was the substantial division of assets. The parties agreed Chris would

pay Natalie $350,000 for her share of his business, $2500 per month for 120 months in additional property settlement, and $75,000 per year payable as "salary" for twelve years as a former employee of C.R. Holland. No spousal support was ordered.

At the time of the dissolution, Natalie was not employed; however, her imputed income as reflected on her October 28, 2014 affidavit of financial status was $24,000 annually. Since the decree was filed, she has taught one year at Waldorf College as an adjunct faculty earning $29,000, as well as worked at the YMCA, two hours per week at $8.25 per hour. Her financial affidavit filed prior to the modification hearing listed her annual gross income at $29,124. Chris owned and worked for numerous businesses including C.R. Holland, Holland Moving and Rigging Services, Atlas Enterprises, and Grok, L.L.C. Chris submitted a financial affidavit on October 14, 2014, showing his gross annual income at $68,775. His affidavit filed prior to the modification hearing listed his gross monthly income as $12,526.76 or approximately $150,321.12 per year.

In spite of this apparent increase in his income, Chris filed an application to modify child support on April 8, 2016, less than a year after the entry of the decree, asserting he had an involuntary reduction of his income. Natalie resisted. The matter came on for trial in September 2016. While reviewing the original child support stipulated amount, the court found "many factors went into the parties' agreement" as to how the child support figure was determined. Additionally, as the record was developed, the modification court noted Natalie's expert opined Chris's 2014 to 2015 income changed from a loss of $566,801 to a gain of $294,000, an increase of $861,000. Finding no support for Chris's

assertion his income had significantly decreased, and hence no evidence to support his claim of a substantial change of circumstances not contemplated by the decree, the modification court denied Chris's petition to modify.

Chris appeals, and Natalie cross-appeals.

## II. Standard of Review

We review the modification of a dissolution decree de novo. *In re Marriage of Wessels*, 542 N.W.2d 486, 490 (Iowa 1995). However, we will not disturb the trial court's conclusion unless there has been a failure to do equity. *Id*.

## III. Child Support

Chris asserts the modification court should not have used the child support from the stipulated decree to determine whether modification was appropriate, as the decree failed to make the requisite findings as to how the agreed-upon child support deviated from the guidelines. Instead, Chris asserts the modification court should have applied the child support guidelines as if it were looking at the dissolution anew. "A stipulation and settlement in a dissolution proceeding is a contract between the parties; however, it becomes final only when accepted and approved by the court." *In re Marriage of Handeland*, 564 N.W.2d 445, 446 (Iowa Ct. App. 1997). When a stipulation merges into a decree, it is then to be interpreted and enforced as a final judgment of the court, not as a separate contract between the parties. *Id*. Additionally, if the court varies from the guidelines, it must determine whether the variance is justified and appropriate, and include reasons for the variance. *Id*.

Here, the modification court stated the parties' stipulated decree appeared to vary from the child support guidelines for a variety of possible reasons.

However, even without detailed findings in the original decree, the stipulation stated, "[t]hese calculations were based on the Child Support Guideline Worksheets." Thus, the modification court merged the stipulated amount of child support into the dissolution decree, which became the judgment of the court. Therefore, the modification court was correct in using the amount of child support set in the stipulated decree as the starting point for determining child support in future modifications.

A child support amount may be modified if there is a substantial change in circumstances, as in "changes in the employment, earning capacity, income, or resources of a party." Iowa Code § 598.21C(1)(a) (2016). If the court order for child support varies by ten percent or more from the amount which would be due pursuant to the most current child support guidelines, a substantial change of circumstances exists. *Id.* § 598.21C(2)(a). The court shall not vary from the amount of child support resulting from application of the guidelines unless a substantial injustice would result to the payor, payee, or child or to do justice between the parties under the special circumstances of the case. Iowa Ct. R. 9.11.

> Our supreme court has held:
>
> (1) not every change in circumstances is sufficient; (2) it must appear that the continued enforcement of the decree would, as a result of the changed circumstances, result in positive wrong or injustice; (3) the change in circumstances must be permanent or continuous rather than temporary; and (4) the change in circumstances must not have been within the contemplation of the district court when the original decree was entered.

*In re Marriage of Maher*, 596 N.W.2d 561, 565 (Iowa 1999) (noting further that "the district court has reasonable discretion in determining whether modification

is warranted, and we will not disturb that discretion unless there is a failure to do equity.").

From evidence presented at the modification hearing, the modification court found Chris's income actually increased. While Chris's accountant disagreed Chris's "personal income" increased, he agreed Chris's businesses have increased profitability, but testified it would be irresponsible for a sole shareholder to allocate too much income to personal income. We agree with the modification court there is no evidence that Chris experienced an involuntary reduction in income.

On the other side of the ledger, Chris asserts Natalie's income is underreported as the property settlement of $75,000 per year he pays to Natalie should be considered by the court as her income, in addition to the salary she earns from teaching. Thus, he claims her real income is $104,858.

The modification court determined the parties' property settlement—including the $75,000 annual payment—was not contemplated to be considered as a wage or income for purposes of calculating child support, but rather, it was clearly set out as part of the structured property settlement. The modification court found structuring the property settlement payment as the parties did in their stipulation actually provided Chris with a tax benefit. Thus, the parties created the property settlement structure after contemplating the larger financial picture with attendant tax consequences. The record establishes the property settlement was not contemplated as traditional income for Natalie for purposes of calculating child support.

Given the credible evidence that Chris's income did not decrease, and Natalie's income did not significantly increase, the modification court appropriately decided a substantial change in circumstances did not occur, and appropriately dismissed Chris's petition.

## IV. Attorney Fees

On cross-appeal, Natalie asserts the modification court should have awarded her trial attorney fees. The court's decision on whether or not to award attorney fees is reviewed for an abuse of discretion. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2005). The district court considers the needs of the party making the request and the ability of the other party to pay. *Id.* Finding no abuse of discretion, we affirm the denial of Natalie's trial attorney fees.

Natalie also requests an award of appellate attorney fees. *In re Marriage of Applegate*, 567 N.W.2d 671, 675 (Iowa Ct. App. 1997). An award of appellate attorney fees is not a matter of right but rests within our discretion. *Id.* In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal. *Id.* Natalie was not only required to defend the original decree filed in April 2015, but also required to defend the modification court's decision on appeal. After considering these factors, we award Natalie $5000 in appellate attorney fees.

## V. Conclusion

Because we conclude Chris failed to show a substantial change in circumstances since the original decree, we affirm the modification court's denial

of the petition to modify child support. We similarly affirm the district court's denial of Natalie's request for trial attorney fees, but award her $5000 in appellate attorney fees.

**AFFIRMED ON BOTH APPEALS.**