# IN THE COURT OF APPEALS OF IOWA

No. 20-1383
Filed October 6, 2021

IN RE THE MARRIAGE OF KELVIN RUMMELS
AND BELITA HARRIS-RUMMELS

Upon the Petition of
KELVIN RUMMELS,
      Petitioner-Appellant,

And Concerning
BELITA HARRIS-RUMMELS,
      Respondent-Appellee.

_____

Appeal from the Iowa District Court for Scott County, Joel W. Barrows, Judge.

A former husband appeals the spousal support and attorney fee provisions in his dissolution decree. **AFFIRMED.**

Paul L. Macek of Hopkins & Huebner, P.C., Davenport, for appellant.

Belita Harris, Davenport, self-represented appellee.

Considered by Tabor, P.J., Greer, J., and Doyle, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**TABOR, Presiding Judge.**

Kelvin and Belita Rummels divorced after twenty-three years of marriage. In the decree, the district court ordered Kelvin to pay $450 per month in spousal support and $9000 toward Belita's trial attorney fees. Kelvin appeals, contending he cannot afford to pay those amounts. Recognizing the district court is in the best position to balance the needs of the divorcing spouses, we find its calculations were fair to both parties.

## I.    Facts and Prior Proceedings

Kelvin and Belita married in 1997 and separated in 2017. At the time of the dissolution proceedings in 2020, Kelvin was fifty-eight and Belita was fifty-five years old. Neither is in perfect health. Kelvin testified he was hospitalized in 2017 after a heart attack. He walks with a cane and has severe hypertension, diverticulitis, and reactive depression. Belita testified she suffers from Crohn's Disease, chronic kidney disease, hypertension, and carpal tunnel syndrome.

But both have steady employment. Kelvin has worked at Arconic (formerly Alcoa) in Riverdale since 2011. His job is physically demanding; it involves feeding coils into a machine and sometimes disposing of scrap metal by hand. He testified he put in thirty-six hours per week at an hourly rate of $28.53.[1] Thus the court calculated his annual income as $53,408. Belita has worked for Community Health Care for over thirteen years. Both parties agreed that when their children were still at home, she had primary responsibility for raising them. She now works eight to five Monday through Friday, earning $36,836 per year. Kelvin had just one year

---

[1] Belita testified that during their marriage Kelvin regularly worked overtime. But Kelvin testified he had not worked overtime since his heart attack in 2017.

of college; Belita attended for two years. On this record, the district court did not believe that "either of them has the capacity to significantly increase their earnings during the remainder of their careers."

Kelvin petitioned to dissolve the marriage in September 2019. One year later, the court heard the parties at the dissolution trial and issued the decree. The decree (1) divided the parties' assets and debts, (2) awarded Belita $450 per month in spousal support, and (3) ordered Kelvin to pay $9000 of Belita's attorney fees. Kelvin appeals, challenging the second and third aspects of the decree.[2]

## II.     Scope and Standards of Review

In equity cases like this one, our review is de novo. *In re Marriage of Mann*, 943 N.W.2d 15, 18 (Iowa 2020). We give weight to the district court's fact findings but are not bound by them. *Id.* When reviewing an award of spousal support, we give the district court considerable discretion and will disturb an award only if we find it inequitable. *See In re Marriage of Smith*, 573 N.W.2d 924, 926 (Iowa 1998).

## III.     Legal Analysis

## A.     Spousal support

Citing the length of their marriage and the difference in their earnings, Belita asked for $500 per month in traditional spousal support. Kelvin testified he should not have to pay any spousal support because Belita was already "doing well for herself." After considering "the income amounts available to both Kelvin and Benita and the distribution of assets," the district court found an equitable amount of support was $450 per month until Belita remarried or either party died.

---

[2] Belita did not file an appellee's brief.

On appeal, Kelvin insists he does not have enough income to meet his own living expenses and pay spousal support. He also cites his health problems and the impact those conditions may have on his earning ability. And he maintains "Belita's actual need for spousal support is nil." Kelvin points out that since their separation she has been living with her mother in "a three-bedroom house with a garage on a treed lot"—a housing situation which exceeds the apartment living they experienced during their marriage.

In determining whether to award spousal support, courts must consider the following statutory factors: (a) the length of marriage; (b) the parties' ages and physical and emotional health; (c) the property distribution; (d) the parties' educational achievements; (e) the earning capacity of the party seeking support, (f) the feasibility of that party becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal; (g) tax consequences to each party; (h) any mutual agreement of the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party; (i) the provisions of an antenuptial agreement, and (j) other relevant factors. Iowa Code § 598.21A (2020).

To start, this twenty-three-year marriage crossed the "durational threshold" meriting "serious consideration for traditional spousal support." *See In re Marriage of Gust*, 858 N.W.2d 402, 410–11 (Iowa 2015) (setting twenty years as tipping point). But because the parties are similar in age, both have health issues, both received modest amounts in the property distribution, and both completed just a year or two of college, those factors do not weigh strongly in either direction. As

key considerations, we are left with their earning capacities and the likelihood that Belita can reach a standard of living generally equivalent to the one she enjoyed during the marriage.

We are unconvinced by Kelvin's characterization of Belita's cushy living arrangement during their separation. Belita testified she moved in with her elderly mother and has no ownership interest in the home. She also testified that she paid her mother $450 to $500 per month for household expenses.[3] Belita planned to rent an apartment near her mother's house so she could continue to help with her grocery shopping and medical appointments. We do not think that because Belita has been living in her mother's house temporarily, her actual need for support is "nil." It is reasonable for her to establish her own residence. And the record reflects that Belita made employment choices during the marriage that reflected her role as the primary caregiver for their children. Kelvin agreed he was "the financial provider." That arrangement led to a disparity in their annual incomes of about $16,600 at the time of trial. The district court decided that earning disparity merited an award of traditional alimony, albeit less than requested by Belita.

True, $450 per month is on the higher end of a reasonable spectrum—given the comparative incomes of the two parties. But we are mindful of our obligation to accord the district court considerable latitude and that we disturb the district court's spousal support order "only when there has been a failure to do equity." *See id.* at 406. Applying that standard, we cannot say the award failed to do equity.

---

[3] Kelvin argues that Belita's testimony was "not credible." But the district court found both parties were "reasonably credible witnesses." We defer to the court's finding. *In re Marriage of Gensley*, 777 N.W.2d 705, 713 (Iowa Ct. App. 2009).

**B.** **Trial Attorney Fees**

The district court ordered Kelvin to pay $9000 in trial attorney fees. He contests that amount, asserting that Belita's misguided trial strategy to show that he was living "high off the hog" led to excessive costs of representation.

The district court has considerable discretion in awarding attorney fees in dissolution cases. *In re Marriage of Steele*, 502 N.W.2d 18, 22 (Iowa Ct. App. 1993). Generally, an award of attorney fees depends on the financial situations of the parties and their relative ability to pay. *In re Marriage of Goodwin*, 606 N.W.2d 315, 324 (Iowa 2000). We will not disturb such an award absent an abuse of discretion. *See In re Marriage of Wessels*, 542 N.W.2d 486, 491 (Iowa 1995).

We find no abuse of discretion in the district court's award of $9000. Belita's attorney submitted a billing statement for $13,470, excluding the day of trial. The court appropriately reduced that amount by more than one-third, presumably to reflect "unproductive" time spent in litigating issues of marital-asset dissipation. Otherwise, Kelvin's larger earnings justifies the shift in fees.

**AFFIRMED.**