# IN THE SUPREME COURT OF IOWA

No. 12–0912

Filed November 15, 2013

**IN RE THE MARRIAGE OF KENNETH R. MICHAEL
AND MELISSA J. MICHAEL**

Upon the Petition of
**KENNETH R. MICHAEL,**

    Appellant,

And Concerning
**MELISSA J. MICHAEL,**

    Appellee.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Black Hawk County,
Andrea J. Dryer, Judge.

Ex-husband sought, and we granted, further review of a court of
appeals decision reversing in part the district court's modification of his
spousal support obligation. **DECISION OF COURT OF APPEALS
VACATED IN PART AND AFFIRMED IN PART; DISTRICT COURT
JUDGMENT AFFIRMED AS MODIFIED.**

Steven H. Lytle and Ryan G. Koopmans of Nyemaster Goode, P.C.,
Des Moines, for appellant.

Ashley A. Tollakson of Hartung & Schroeder, LLP, Des Moines, for
appellee.

**HECHT, Justice.**

The district court modified Kenneth Michael's obligation to pay Melissa Michael traditional alimony, concluding the payments should cease when Kenneth reaches age sixty-seven. The court's order also terminated immediately Kenneth's obligation to pay for Melissa's health insurance. The court of appeals affirmed the termination of Kenneth's health insurance obligation, but found no substantial change of circumstances justifying the termination of the alimony obligation prior to Melissa's remarriage or death. On further review, we vacate the decision of the court of appeals, modify the decision of the district court, and affirm.

## I. Background Facts and Proceedings.

Kenneth and Melissa Michael were married in April 1971. Both are now sixty-three years old, and they are the parents of two adult children who are not involved in this appeal. Melissa worked as a homemaker and stay-at-home mother for the duration of the parties' twenty-three year marriage. Melissa secured part-time work outside the home shortly after Kenneth initiated a dissolution proceeding in September 1993. She worked in various jobs during the course of the proceeding, but when the dissolution decree was entered in June 1994, she was temporarily unemployed and without any expectation of retirement or pension benefits. At the same time, Kenneth had just begun a new job at Brown & Brown—a construction company in Kansas—at an annual salary of approximately $47,000.

The decree required Kenneth remain responsible for: (1) the student loans of the children, up to $20,000 exclusive of interest for each child; (2) medical and hospital insurance for the children until they completed postsecondary education; (3) a life insurance policy for as long

as he was obligated to contribute to the costs of postsecondary education for the children; (4) medical insurance coverage for Melissa; and (5) weekly spousal support payments of $450 for fifty-two weeks, followed by payment of one-third of his annual gross salary and bonuses thereafter until Melissa died, remarried, or cohabited.

Kenneth sought modification of the spousal support obligation in December 1996. By the time of the trial on the modification in November 1997, Kenneth had married his current wife, Barbara, and had established a new home with her. He had continued working at Brown & Brown and had seen his salary increase to $1500 weekly, or approximately $78,000 annually. He had earned annual bonuses of $1500, $7000, and $20,000 in 1994, 1995, and 1996, and he had consistently made his support payments based on his gross earnings including weekly wages and bonuses. After fifty-two weekly payments of $450, his obligation had been reduced briefly to $397 weekly, but the obligation thereafter increased as his salary increased. By November 1997, Kenneth was paying Melissa $500 per week plus one-third of his annual bonus. Beyond the spousal support obligation, Kenneth was also making monthly loan payments of approximately $440 on a debt of nearly $45,000 incurred in part for the cost of the children's postsecondary education. Barbara was then employed full-time, making approximately $10.35 per hour. Melissa had secured full-time employment with Principal Mutual Life Insurance Company at an annual salary of $17,551, exclusive of bonus and overtime.

After the 1997 trial on modification, the district court noted various changes had occurred since the entry of the original decree but nonetheless denied Kenneth's request for relief, explaining the changes were not substantial or material and would have been within the

contemplation of the district court at the time of the decree. In August 1998, while an appeal of the court's order was pending, the parties stipulated to and the court entered an order modifying Kenneth's spousal support obligation, setting the amount at $480 weekly until Melissa died, remarried, or cohabited. The other provisions, including the medical insurance support provision, were neither litigated nor mentioned in the stipulated modification and remained unchanged.

Kenneth filed a second petition for modification in July 2011, requesting termination or significant reduction of his weekly support and monthly medical insurance payments to Melissa. The district court held a trial on the matter in February 2012. Although Kenneth had earned $111,399 in the 2010 calendar year at Hall Brothers, he had been laid off in early 2011 as part of a reduction in the employer's workforce.[1] After three weeks of job search, he had secured new full-time employment as a project manager with Venture Corporation at an annual salary of $85,020, or approximately $1635 per week. At the 2012 modification trial, Kenneth expressed doubt that he would receive bonuses with his new employer. He also testified that despite his receipt of steadily increasing bonuses prior to the 1998 proceeding, he had not received a substantial bonus in any of the years following the 1998 proceeding.[2] He was making payments on a credit card debt of approximately $44,000, some of which remained from the obligations allocated to him in the 1994 decree, and some of which was attributable to Kenneth's and

---

[1]Hall Brothers acquired Brown & Brown in 2008. Kenneth remained with the company as vice president of operations through that transition and until the layoff in 2011.

[2]He did, however, receive a special $5000 bonus at the beginning of 2011 for his work relating to the Hall acquisition of Brown & Brown.

Barbara's increasing medical expenses. Kenneth owned an individual retirement account with a value of $90,614. Barbara had remained in the same full-time employment since the 1998 modification and her annual income had approximately doubled over the years. Her gross earnings in 2010 were $43,530 and she earned $39,749 in 2011.

Melissa had remained with the same employer, now called Principal Financial Group (Principal), since the 1998 modification. By 2011, her pension benefits had vested, and she had accumulated approximately $190,000 in retirement funds. With wages of $29,201,[3] Kenneth's weekly support payments totaling $24,960 for the year, and $333 in interest and dividend income, Melissa's reportable income in 2010 was $54,494.

Kenneth testified at the 2012 modification trial that he had growing concerns about his and Barbara's medical expenses. Kenneth and Barbara are smokers, and Kenneth is a recovering alcoholic. Kenneth had received treatment for his alcoholism once during the marriage in 1982. He suffers from degenerative spondylitis and underwent back surgery to repair two herniated discs in 2008. He entered treatment for alcoholism again voluntarily in 2009 following the back surgery. He now takes Aleve® for his back pain, but he does not currently take any prescription medications. He has also dealt with various neck and knee problems. His job as project manager at Venture Corporation requires a 160-mile roundtrip commute, longer on-the-job hours, and more daily physical exertion than his previous job. He did

---

[3]Melissa's rate of pay since 2007 has been $17 per hour, or $35,638 annually, exclusive of overtime and bonuses. Her pay has been capped for the past four years and she does not expect a raise in the foreseeable future. The discrepancy between her gross wages and her reportable income is apparently due to her pre-tax contributions to her retirement accounts.

not testify at the trial that he was incapable of performing these tasks, but he speculated that he might not be capable for much longer, based on his physician's advice and his own perception of his condition.

Barbara testified at the trial that she suffers from inflammatory neuropathy, chronic pain, and numbness in her feet. She takes Lyrica® for the chronic pain, after having tried several other medications, each of which brought various side effects. The Lyrica® affects Barbara's vision and has contributed significantly to an increase in Barbara's and Kenneth's out-of-pocket medical expenses. The prognosis for her condition is uncertain, but she presently plans to continue working full-time and has no plans for retirement.

Melissa raised medical concerns of her own at the trial. She suffers from osteoarthritis and takes prescription medication for joint inflammation. She wears eye glasses and incurs optometry expenses each year. She has also experienced shingles and migraines. She has, however, characterized her medical concerns and expenses as routine.

After considering the evidence, the district court determined the increase in Melissa's income, her continued employment with Principal, and the pension and other resources that would be available to her upon retirement were circumstances not contemplated by the district court at the times the 1994 decree and 1998 modification were entered. Further, the court explained, these changes were substantial and more or less permanent. The court found inequitable the requirement that Kenneth continue making weekly support payments indefinitely. Accordingly, the court modified the decree to require instead that Kenneth continue making weekly payments of $480 until he reaches age sixty-seven, or until Melissa remarries or either party dies. Finding Melissa's continued employment with Principal had allowed her to obtain medical, dental,

and vision insurance coverage, the court further modified the decree by eliminating the requirement that Kenneth subsidize Melissa's monthly health insurance premium. The court ordered that the parties pay their own attorney fees and split the court costs of the modification action.

Melissa appealed and we transferred the case to the court of appeals. The court of appeals reversed the modification of Kenneth's weekly support obligation, concluding Kenneth had failed to demonstrate a substantial change in the parties' financial circumstances not contemplated by the court at the time of the 1998 modification. The court of appeals found any disparities in savings and debt obligations between the parties had been self-inflicted and could not constitute grounds for a reduction in Kenneth's spousal support obligation. The court of appeals affirmed, however, the termination of Kenneth's monthly health insurance payment obligation and the allocation of attorney fees and costs. We granted Kenneth's application for further review of the court of appeals decision.

**II.  Scope of Review.**

We review de novo a decision modifying the terms of a marriage dissolution decree. *In re Marriage of Johnson*, 781 N.W.2d 553, 554 (Iowa 2010). We will not disturb the trial court's conclusions "unless there has been a failure to do equity." *In re Marriage of Wessels*, 542 N.W.2d 486, 490 (Iowa 1995). We review a district court's decision on attorney fees for abuse of discretion. *See In re Marriage of Goodwin*, 606 N.W.2d 315, 324 (Iowa 2000).

**III.  Discussion.**

Kenneth raises two issues on appeal, contending (1) the district court erred in failing to eliminate or substantially reduce his weekly support obligation before he reaches the age of sixty-seven, and (2) the

district court erred in failing to award him reasonable attorney fees as the prevailing party below. Melissa cross-appeals, assigning as error the district court's elimination of Kenneth's weekly support obligation at age sixty-seven and the court's immediate elimination of his monthly health insurance payment obligation. Both parties request appellate attorney fees.

**A. The Spousal Support Obligations.** The parties dispute the soundness of the district court's determination that Kenneth established a substantial change in circumstances has occurred since the 1998 modification. Kenneth argues that because Melissa now supports herself and has accumulated substantial retirement savings, no justification for a continuing traditional alimony payment remains. Further, Kenneth contends, his decrease in real earnings from employment after his transition from Hall Brothers to Venture Corporation, his significant health issues, his inability to accumulate significant retirement resources in part due to his spousal support and debt service obligations arising from the original decree, and his advancing age, when taken together, constitute a substantial change in circumstances justifying immediate modification of his support obligations, instead of prospective relief delayed five years as the district court ordered. Melissa responds that the facts Kenneth presents, regardless whether taken in isolation or in combination, cannot constitute a change in circumstances justifying modification. She also contends that regardless whether Kenneth has demonstrated a substantial change, she has demonstrated a need for continuing support until her death or remarriage. Therefore, she argues, the district court erred in making any further modification beyond that agreed to by the parties in 1998.

Our marriage dissolution statute provides that a district court "may subsequently modify child, spousal, or medical support orders when there is a substantial change in circumstances." Iowa Code § 598.21C(1) (2009). The statute adds that the court shall consider a number of specific factors in determining whether there has been a substantial change. Among the factors relevant here are:

> (*a*) Changes in the employment, earning capacity, income, or resources of a party.
>
> (*b*) Receipt by a party of an inheritance, pension, or other gift.
>
> (*c*) Changes in the medical expenses of a party.
>
> . . . .
>
> (*e*) Changes in the physical, mental, or emotional health of a party.
>
> . . . .
>
> (*l*) Other factors the court determines to be relevant in an individual case.

*Id.*

In reviewing an earlier version of this provision, which enumerated substantially the same list of factors, we explained that we examine the factors in conjunction with several "other well-established principles governing modification." *See In re Marriage of McCurnin*, 681 N.W.2d 322, 329 (Iowa 2004). The party seeking modification, for example, bears the burden of establishing by a preponderance of the evidence the substantial change in circumstances. *Wessels*, 542 N.W.2d at 489–90. A substantial change justifying a modification must be permanent or continuous rather than temporary in nature. *McCurnin*, 681 N.W.2d at 329–30. We have also consistently explained the substantial change must not have been within the contemplation of the district court when the decree was entered, and we presume the decree is entered with a

"view to reasonable and ordinary changes that may be likely to occur." *Wessels*, 542 N.W.2d at 490; *see also McCurnin,* 681 N.W.2d at 329–30.[4]

Several additional principles from our prior modification cases guide our analysis. We may consider the unrealized but existing earning potential of a party at the time of the decree and contrast that with a later established earning potential as part of our determination of whether a substantial change in circumstances has been demonstrated. *See McCurnin,* 681 N.W.2d at 330; *see also In re Marriage of Sjulin*, 431 N.W.2d 773, 777 (Iowa 1988). We have cautioned that while changes in earning capacity or earning potential may constitute substantial changes for purposes of the statutory determination, the changes will not justify a modification if they result from an improper intent to deprive an obligee of support. *In re Marriage of Rietz*, 585 N.W.2d 226, 229–30 (Iowa 1998). In addition, in certain modification cases, we have distinguished rehabilitative alimony from permanent alimony awards and explained that the rationale underlying the award may have some bearing on the determination of whether modification is justified. *See Wessels*, 542 N.W.2d 489–90. Finally, regardless the type of award, we have often observed that a change in an obligee spouse's ability to or potential for self-support may be an important consideration in our determination. *See id.* at 490 (affirming modification extending duration of award in case where obligee had been unable to meet rehabilitative goal of self-support); *cf. In re Marriage of Francis*, 442 N.W.2d 59, 64 (Iowa 1989) (explaining, in reviewing an initial dissolution decree, that traditional

---

[4]In developing that principle in the context of modification of child support orders, we have emphasized we examine what the court entering the decree actually knew, as opposed to what the parties knew or should have known at the time of the earlier proceeding. *See Mears v. Mears*, 213 N.W.2d 511, 515 (Iowa 1973).

alimony is "payable for life or so long as a spouse is incapable of self-support").

The parties have raised various significant equitable considerations for our analysis here. Addressing Kenneth's present circumstances first, we note the district court found Kenneth failed to establish that his current salary at Venture Corporation is permanent and raised the possibility that his salary might soon approach his previous compensation level at Hall Brothers. We view Kenneth's current position somewhat differently. Kenneth reached his 2009 and 2010 compensation levels at Hall Brothers after more than ten years of service as a vice president at the company, and after having previously served for several years as a project manager for the company Hall Brothers later acquired. He now works again as a new project manager, not a vice president, at Venture Corporation, and the record suggests he has had no indication thus far of any prospect for advancement. He has not received a substantial bonus since the 1998 modification and has had no indication that bonuses—a very significant component of his compensation prior to the 1998 modification—will be paid by his new employer. Moreover, despite his advancing age and his deteriorating health and physical condition, he now works in a more physically demanding role than the one he had performed for the previous twelve years, casting significant doubt on his potential for longevity and advancement at the company.[5] *See* Iowa Code § 598.21C(1)(*a*) (requiring consideration of changes in both income and earning capacity in determining whether modification is appropriate); *see also In re Marriage*

_____

[5]The record does not suggest Kenneth has any desire to retire or choose a course of employment for the purpose of reducing his support obligation; rather, it merely suggests he has significant uncertainty regarding his future at the company.

*of Wegner*, 434 N.W.2d 397, 399 (Iowa 1988) (noting distinction between changes in present income and changes in earning potential and explaining both were relevant in affirming modification of obligee's award).

Melissa notes that regardless whether Kenneth has the potential for advancement with Venture Corporation, his current salary is actually greater than the salary he received at the time the 1998 decree was entered, but we find this contention unpersuasive. Kenneth's annual salary of $85,000 in 2011 is nominally greater than his 1998 base salary of $78,000, but we think it important to note again that Kenneth received significant year-end bonuses from Brown & Brown in the years preceding the 1998 modification—bonuses that rendered his total compensation for those years greater than his 2011 compensation. In addition, we have often explained that we may consider the effects on income of inflation and increasing costs of living—both of which render Kenneth's 2011 compensation significantly smaller in real terms than his 1998 compensation. *See, e.g., Page v. Page*, 219 N.W.2d 556, 558 (Iowa 1974) (concluding a twenty percent decrease in income at a time when the cost of living had increased constituted a substantial decrease in the obligee's income and affirming the district court's modification of the obligor's support obligation).[6] Taken together, Kenneth's new uncertainty regarding his employment longevity and earning potential and his significantly smaller income relative to his income at the time of the 1998 modification strongly influence our determination of whether a substantial change has been established and modification is appropriate.

---

[6]We note these considerations will also inform our analysis of Melissa's position, and we consider the relative impact of these factors on the positions of both parties. *See Page v. Page*, 219 N.W.2d 556, 558 (Iowa 1974).

*See* Iowa Code § 598.21C(1)(*a*); *see also Rietz*, 585 N.W.2d at 231 (affirming district court's modification when record revealed obligor was no longer likely to be employed at the high income level he had enjoyed at the time of the original decree); *cf.* American Law Institute, *Principles of the Law of Family Dissolution* § 5.08 cmt. *d*, at 970 (2000) [hereinafter *Principles*] (explaining modification may be appropriate when "the former spouses' living standards are less disparate than expected because of a decline in the obligor's income").

Our modification analysis also requires consideration of Melissa's current financial position. As Kenneth contends, and as the district court found, Melissa now earns more than twice what she earned at the time of the 1998 modification and she is more than capable of supporting herself. Her position now provides significant medical, dental, and vision insurance coverage. She has minimal debt, she holds an undergraduate degree in business, and she has remained employed at Principal for the past seventeen years. Her pension at Principal has now vested and will yield her an estimated payment of approximately $774 monthly upon her retirement. The district court observed, and we think it important to note, she had been at Principal just three years at the time of the 1998 modification, and her pension had not yet vested. We agree with the district court's finding that her longevity at the company, her substantial increase in income, and her accrual of significant retirement benefits were not likely within the contemplation of the district court at the time the 1998 modification was entered. *See McCurnin*, 681 N.W.2d at 330 (explaining change from an unrealized earning potential to an established earning potential may be an important consideration in the modification analysis); *Sjulin*, 431 N.W.2d at 777 (same).

We acknowledge Melissa's current income remains significantly less than Kenneth's, but we think it important to emphasize, as the district court did, that our equitable analysis must also account for changes in the relative positions of the parties. *See, e.g., McCurnin*, 681 N.W.2d at 330–31 (affirming modification of award extending payment obligation despite finding obligee's income had nearly doubled, in part because obligor's income had nearly tripled and his financial position had "vastly improved" since the decree); *see also Principles* § 5.08(1)(a), at 963 (recommending modification when the living standards of the spouses are "substantially more or substantially less disparate than contemplated by the prior order" as a result of a decline in the obligor's income); *cf. Wegner*, 434 N.W.2d at 399 ("[B]oth parties, if they are in reasonable health, need to earn up to their capacities . . . and not lean unduly on the other party for permanent support."). Given Melissa's current financial position as compared to her position in 1998, the change in Melissa's financial position relative to Kenneth's position at present as compared to her position relative to Kenneth's position in 1998, and Melissa's present ability to support herself, we conclude Kenneth has established a substantial change in circumstances and is entitled to a modification of his weekly support obligation. In addition, we conclude Kenneth has established a substantial change with respect to Melissa's medical support requirements, given the advent of her employer-sponsored insurance coverage, which she had not obtained at the time of the dissolution and was not addressed at the time of the 1998 modification. We therefore turn to the question of what modification of Kenneth's obligations is justified by this record.

Giving due account to our various equitable considerations, including the parties' respective financial positions and the change in the

income gap between the parties, we conclude Kenneth's weekly support obligation should be reduced to $285 per week.[7] *Cf. Rietz*, 585 N.W.2d at 228–29, 231 (affirming district court's modification of an obligation from $4000 monthly to $1000 monthly when obligor's expected annual income declined from approximately $200,000 to approximately $50,000 and obligee's earning capacity remained stable). We do not disturb that portion of the 1998 modification requiring that the obligation persist until Melissa's remarriage, cohabitation, or death.[8] We agree with the district court's determination that the changed circumstances dictate Kenneth's monthly medical insurance payment obligations should cease now.

**B. Attorney Fees.** As we have already noted, Kenneth contends the district court erred in ordering the parties to pay their own attorney fees incurred in the district court proceedings, and he requests this court order Melissa to pay his appellate attorney fees. Melissa responds that

---

[7]We note that at the time of the 1998 modification, Kenneth earned $98,000 ($78,000 base pay plus a bonus of $20,000) per year. Melissa earned $17,551 per year. The 1998 modification established a spousal support obligation of $24,960 per year ($480 per week)—a figure equivalent to approximately thirty-one percent of the difference between the parties' annual employment earnings at the time (24,960 ÷ 80,449 = .3102). The reduction of Kenneth's support obligation to $285 per week ($14,820 per year) will maintain Kenneth's support obligation at approximately thirty-one percent of the difference between Kenneth's current annual earnings of $85,020 and Melissa's current earnings of $37,413 (14,820 ÷ 47,607 = .3113).

[8]Although the district court concluded the support obligation should terminate when Kenneth reaches the age of sixty-seven, equitable considerations lead us to a different result. Whether Kenneth's obligation to pay traditional spousal support should terminate at that future date will depend on the circumstances of the parties prevailing at that time. *See, e.g., In re Marriage of Rietz*, 585 N.W.2d 226, 231 (Iowa 1998) (affirming modification setting support obligation "based on [obligor's] present actual income"); *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993) (striking portion of modification that "prejudge[d]" obligee's right to modification and noting "future events" would "determine the parties' relative rights"); *cf. In re Marriage of Schlenker*, 300 N.W.2d 164, 165 (Iowa 1981) ("[T]rial courts should make final disposition of [dissolution] cases on the circumstances then existing.").

the district court's order was reasonable and within its discretion, but she requests an award of her appellate attorney fees. The court of appeals affirmed the district court's order on attorney fees below, and denied both parties' requests for attorney fees incurred in the appeal.

Section 598.36 addresses attorney fee awards in modification proceedings. The section provides that the district court "may award attorney fees to the prevailing party in an amount deemed reasonable by the court." Iowa Code § 598.36. We have emphasized that the language of the provision is permissive and that we give the district court considerable discretion in determining whether it should award fees at the district court level. *See In re Marriage of Maher*, 596 N.W.2d 561, 568 (Iowa 1999). We have similar discretion in awarding appellate attorney fees. *See id.* We have often explained the controlling considerations in the attorney fee determination are the parties' respective abilities to pay. *See Wessels*, 542 N.W.2d at 491; *Francis*, 442 N.W.2d at 67. We may also consider whether a party resisting the modification petition was successful, and whether a party has been obliged to defend the trial court's decision on appeal. *In re Marriage of Bolick*, 539 N.W.2d 357, 361 (Iowa 1995).

Here, we note both parties may be deemed to have prevailed to some extent in the proceedings below. While neither party is affluent, both parties have resources with which to pay their fees, and we find their respective abilities to pay comparable. Accordingly, we cannot find the district court erred in ordering the parties pay their own attorney fees, and we decline to award either party appellate attorney fees.

**IV. Conclusion.**

We modify the parties' dissolution decree by reducing Kenneth's obligation to pay weekly spousal support and terminating his monthly

obligation to contribute to the cost of Melissa's health insurance. Accordingly, we vacate in part and affirm in part the decision of the court of appeals, and affirm as modified the judgment of the district court. Each party shall pay half the costs of the appeal.

**DECISION OF COURT OF APPEALS VACATED IN PART AND AFFIRMED IN PART; DISTRICT COURT JUDGMENT AFFIRMED AS MODIFIED.**