# IN THE COURT OF APPEALS OF IOWA

No. 16-0831
Filed June 7, 2017

IN RE THE MARRIAGE OF PATRICIA F. MURPHY
AND MICHAEL J. MURPHY

Upon the Petition of
**PATRICIA F. MURPHY,**
    Petitioner-Appellee,

**And Concerning**
**MICHAEL J. MURPHY,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Shelby County, Joel E. Swanson, Judge.

A former husband appeals the district court's denial of his petition to modify the spousal support order in the dissolution decree. **AFFIRMED.**

Amanda J. Heims, Council Bluffs, for appellant.

Matthew V. Stierman of Stierman Law Office, P.C., Council Bluffs, for appellee.

Heard by Vogel, P.J., and Doyle and McDonald, JJ.

**VOGEL, Presiding Judge.**

Michael Murphy appeals the district court's denial of his application to modify the spousal support provision contained in the 2005 decree that dissolved his marriage to Patricia Murphy. He claims the court should have modified the spousal support award in light of his health issues that are impacting his ability to continue to work and in light of his claim that Patricia is no longer in need of support. He also asks us to reduce or eliminate the district court's award of Patricia's trial attorney fees. We affirm the district court's decision.

**I. Background Facts and Proceedings.**

The parties' twenty-five-year marriage was dissolved in March 2005, and in the stipulated decree, Michael was ordered to pay Patricia $2750 per month in traditional alimony until either party died or Patricia remarried. Shortly after the dissolution decree was filed, Michael remarried, and he maintains a law practice with his current wife, Kimberly. Patricia has not remarried, and her sources of income, besides the spousal support from Michael, include social security, a portion of Michael's military pension, a small pension payment, and the income from the rental properties she was awarded in the dissolution proceeding, totaling $3311.63 per month.

In November 2015, Michael filed a petition to modify the spousal support order of the dissolution decree, asserting his support obligation should terminate at his retirement, which he claimed was imminent in light of his age and declining health. The matter proceeded to a trial on April 22, 2016. At the trial, Michael

testified he underwent a quadruple bypass surgery.[1]  He also testified he has trouble with regulating his heartbeat, is inflicted with recurrent cellulitis, and has trouble sleeping.  He also has physical scars and psychological trauma associated with his military service while in Vietnam.  Michael asserted he receives a sixty-percent disability benefit from the military due to his health conditions.  He also reported he was more recently having difficulty with his memory—forgetting information in the midst of trial and failing to remember court deadlines.  For that reason, Michael testified he has scaled back his law practice to criminal law only, refusing to take cases dealing with family law, personal injury, workers' compensation, or court appointments.  Michael asserted his doctors told him to reduce his stress.  In order to do so, Michael stated he wanted to retire in light of his age—sixty-six years old—but cannot do so with his monthly spousal support obligation.

The law practice where Michael works is completely owed by Kimberly, and Michael receives a salary from his work at the firm in the amount of $118,500.  He also receives a monthly veteran disability benefit and pension payment in the amount of $1676.38.  He has no administrative obligations for the firm or ownership interest in the firm, and he estimates that he works sixty or sixty-five hours per week.  In addition, the law firm is located in a building that is owned by Kimberly's property management company, and Michael also has no interest in that company.  The two rental properties Michael was awarded in the dissolution proceeding in 2005 were transferred to Kimberly's property

---

[1] The record on appeal is unclear, but Michael's counsel at oral argument informed this court that the bypass surgery occurred approximately two weeks before the stipulated dissolution decree was filed by the district court.

management company during the time Michael was recovering from his heart surgery. While Michael and Kimberly asserted at the modification trial that the properties had no value at the time of the transfer in light of the substantial repairs each required, the financial affidavit Michael filed in the 2005 dissolution proceeding asserted the properties had a net value of over $42,000.

Patricia testified at the hearing that she continues to manage the rental properties she was awarded in the dissolution proceeding, work she performed before the parties' dissolution, and has paid off over $200,000 in mortgage debt attached to the rental properties and the former marital home. While she has typically taken an extended vacation each year, she also has many physical ailments. After the dissolution proceeding, she had knee surgery after falling at work, she had wrist surgery, and more recently she underwent another knee surgery due to a torn meniscus. In addition, she was currently scheduled to have back surgery due to a herniated disc, and she has thyroid disease. Because of her age—sixty-six years old—and her physical condition, Patricia testified she did not believe she could obtain any other employment to support herself.

The district court issued its order denying the modification petition May 11, 2016. The court noted Michael's concerns regarding his health and his desire to retire from the practice of law but observed Michael's law license is still active and no medical testimony was received into evidence to support his claimed need for retirement. The court also noted that while Patricia's net worth has increased since the dissolution due to her work in maintaining the rental properties and her efforts to pay off her debt obligations, her annual income remained steady—yielding between $23,000 and $32,000 annually. The court

concluded that while Michael and Kimberly may have a legitimate purpose for transferring Michael's assets to Kimberly's company and preventing Michael from having an ownership interest in the law firm or property management company, there was no consideration given for Michael's support obligation to Patricia in Michael's retirement plans. As the court noted, "Spousal support creates an obligation which must be considered when considering employment practices and in this case retirement." Michael earned an annual salary of $118,500 and annual disability and pension payments of over $20,000. He had no responsibility for expenses for the law firm, yet he enjoyed a comfortable lifestyle with Kimberly, remodeling the apartment above their law firm at a cost exceeding $500,000 and purchasing a motor home at a cost exceeding $87,000. The court also awarded Patricia her request for $16,362 in trial attorney fees.

Michael appeals.

## II. Scope and Standard of Review.

We review de novo the district court's decision entered in response to a petition to modify the spousal support provision of a dissolution decree. *In re Marriage of Michael*, 839 N.W.2d 630, 635 (Iowa 2013). But, "[w]e will not disturb the trial court's conclusions 'unless there has been a failure to do equity.'" *Id.* (citation omitted). Our review of the district court's award of trial attorney fees is for an abuse of discretion. *Id.*

## III. Modification of Spousal Support.

On appeal, Michael asserts that the district court should have modified his spousal support obligation in light of his health conditions that are influencing his decision to retire and in light of Patricia's ability to support herself with the income

producing assets awarded to her in the dissolution decree. Patricia defends the district court's decision, noting Michael continues to practice law and earns a salary higher now than his earnings at the time of the dissolution decree, she continues to need support, and Michael's actions in transferring assets out of his name are motivated by his desire to avoid his spousal support obligation.

Spousal support obligations can be modified if "there is a substantial change in circumstances." *See* Iowa Code § 598.21C(1) (2015). The court is to consider the following factors when determining whether a substantial change in circumstances has occurred:

> a. Changes in the employment, earning capacity, income, or resources of a party.
> b. Receipt by a party of an inheritance, pension, or other gift.
> c. Changes in the medical expenses of a party.
> d. Changes in the number or needs of dependents of a party.
> e. Changes in the physical, mental, or emotional health of a party.
> f. Changes in the residence of a party.
> g. Remarriage of a party.
> h. Possible support of a party by another person.
> i. Changes in the physical, emotional, or educational needs of a child whose support is governed by the order.
> j. Contempt by a party of existing orders of court.
> k. Entry of a dispositional or permanency order in juvenile court pursuant to chapter 232 placing custody or physical care of a child with a party who is obligated to pay support for a child. Any filing fees or court costs for a modification filed or ordered pursuant to this paragraph are waived.
> l. Other factors the court determines to be relevant in an individual case.

*Id.* Michael bears the burden to prove a substantial change in circumstances by a preponderance of the evidence, and the change "must not have been within the contemplation of the district court when the decree was entered." *See Michael*, 839 N.W.2d at 636. "[W]e presume the decree is entered with a 'view to

reasonable and ordinary changes that may be likely to occur.'" *Id.* (citation omitted). While changes in earning capacity may satisfy this burden, the change will not justify a modification if it is motivated by "an improper intent to deprive an obligee of support." *Id.* In addition, "[m]edical problems associated with the aging process are in the contemplation and knowledge of the trial court when a decree is entered. They are reasonable and ordinary changes that are likely to occur." *In re Marriage of Skiles*, 419 N.W.2d 586, 589 (Iowa Ct. App. 1987).

Michael has increased his income since the time of the initial decree in 2005, when he earned approximately $103,000 annually at his former law firm. While he testified that his current annual salary of $118,500 was set by Kimberly in order to maximize the social security contribution, Kimberly testified that this amount was "commensurate with what [Michael] has earned in the past and commensurate with kind of a fair share based on both of us working [at the law firm] and some of the advantages he gets for not having to hire a secretary, pay for a computer, you know, IT people." Michael's expert also testified at trial that his salary was fairly reasonable in light of the income of the law firm. Michael testified he worked longer hours now than at the time of the dissolution decree. He also receives annual pension and disability payments of over $20,000.

In addition, Michael, while contemplating retirement at some point in the near future, had no definite retirement date, and he testified he planned to work and not apply for social security until he reached the age of seventy—another four years into the future. *See In re Marriage of Gust*, 858 N.W.2d 402, 416–18 (Iowa 2015) (preferring to defer consideration of the impact of retirement upon spousal support obligations until "retirement is imminent or has actually

occurred"); *see also Michael*, 839 N.W.2d at 639 n.8 (declining to terminate the spousal support obligation at payor's anticipated retirement age, which was four years in the future, because such modification would depend on the circumstances of the parties prevailing at the time of the retirement). Michael testified, "[M]y plans are hopefully this alimony will stop then I can then put some money into a retirement plan." Michael claimed his health condition was requiring him to reduce his work productivity, but as the district court noted, no medical evidence or testimony was received at trial to support Michael's assertions.[2]

Michael also points to Patricia's increased net worth as a justification for reducing his support obligation. Since the dissolution decree, Patricia has been able to significantly reduce the debt associated with the real property she was awarded, and her retirement account has seen a considerable increase in value from approximately $100,000 to $294,000. Despite the increase in net worth, Patricia testified her own health conditions will impact her ability to continue to manage the rental properties, and it is those rental properties that generate the majority of her income beyond the spousal support.

Finally, both parties offered expert testimony as to the financial status of Michael and Kimberly and Kimberly's companies in light of Michael's lack of ownership interest in the law firm and his transfer of nearly all of his assets to

---

[2] Michael's assertion on appeal that the 2005 decree "should have terminated alimony upon Michael's eligibility for retirement, as a more than equitable property division occurred" demonstrates he now simply regrets his agreement to pay Patricia traditional spousal support and is attempting to rewrite the 2005 stipulated decree without meeting the necessary statutory burden to prove a substantial change in circumstances not contemplated at the time of the dissolution decree.

Kimberly's company. While the experts testified there were legitimate reasons, such as estate planning and liability exposure, for keeping Michael separate from both the law firm and the property management company, Patricia's expert testified that he saw a deliberate effort by Michael to divest himself of assets by transferring income and ownership into Kimberly's name.

Although Kimberly testified that she and Michael keep their finances separate, Michael and Kimberly utilize a joint checking account where all income and profits from all business ventures are deposited and all personal expenses are paid. Kimberly also testified she came to the marriage with considerable assets and all of the money invested in the law firm and in the property management company, including the improvements to the apartment above the law firm, has come from her premarital assets. While Kimberly has no obligation to support Patricia, in evaluating whether a support obligation should be modified, we are to consider the full picture of Michael's financial situation, which includes the "[r]emarriage of a party" and the "[p]ossible support of a party by another person." *See* Iowa Code § 598.21C(1)(g), (h). For Michael, such support includes his competitive salary at Kimberly's law firm, with no obligation for law firm expenses, and perks such as driving a new car provided by the law firm, taking vacations paid by the law firm, and living comfortably in a newly renovated home in which he has no ownership interest.

In light of all the factors that are to be considered, we cannot say that the district court's denial of Michael's petition to modify the spousal support at this time resulted in "a failure to do equity." *See Michael*, 839 N.W.2d at 635. At this

point, Michael has failed to prove a substantial change in circumstances to justify a modification of his support obligation.

## IV. Trial Attorney Fees.

Finally, Michael asserts the district court abused its discretion in ordering him to pay $16,362 for Patricia's trial attorney fees. He asserts the amount is excessive in light of the fact the only issue before the district court was spousal support and Patricia is capable of paying her own attorney fees. Patricia responds that her attorney fee affidavit supports the amount awarded and asserts she was forced to file a motion to compel and respond to frivolous motions. Pursuant to Iowa Code section 598.36, the court may award the prevailing party in a proceeding to modify a dissolution decree a reasonable amount for attorney fees. The district court has "considerable discretion" in determining whether to award the fees. *In re Marriage of Maher*, 596 N.W.2d 561, 568 (Iowa 1999). We find no abuse of discretion in the trial court's award of attorney fees.

**AFFIRMED.**