# IN THE COURT OF APPEALS OF IOWA

No. 17-2012
Filed July 18, 2018

IN RE THE MARRIAGE OF DEVON LEE FRAKER
AND KASANDRA FRAKER

Upon the Petition of
DEVON LEE FRAKER,
        Petitioner-Appellant,

And Concerning
KASANDRA FRAKER, n/k/a KASANDRA MOORE,
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Poweshiek County, Joel D. Yates,

Judge.


        A father appeals the physical care provision of his dissolution decree.

**AFFIRMED.**


        Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West

Des Moines, for appellant.

        David M. Cox of Bray & Klockau, P.L.C., Iowa City, for appellee.


        Considered by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**VAITHESWARAN, Presiding Judge.**

Devon and Kasandra Fraker married in 2011. They have two children, born in 2010 and 2012. The couple divorced in 2017. The district court granted Kasandra physical care of the children. On appeal, Devon contends the court should have continued a joint physical care arrangement mandated by a temporary custody order or, alternatively, granted him physical care of the children.

Four non-exclusive factors guide joint physical care decisions: (1) "stability and continuity of caregiving," (2) "the ability of spouses to communicate and show mutual respect," (3) "the degree of conflict between parents," and (4) "the degree to which the parents are in general agreement about their approach to daily matters." *In re Marriage of Hansen*, 733 N.W.2d 683, 696-99 (Iowa 2007). The district court considered these and other factors. *See id.* at 699-700 (noting the factors "present important considerations, but no iron clad formula or inflexible system of legal presumptions").

The court found, "rather easily," that Kasandra was the children's primary caretaker. Devon argues the finding is incomplete. He contends the court "disregarded the timeframe from the point of the temporary order forward." To the contrary, the court acknowledged that the parties exercised joint physical care in the year preceding trial but elected to focus on the period "from the respective births of the children to the present time." This was the appropriate time frame for consideration. *See id.* at 697 ("[T]he American Law Institute's *Principles of Family Law,* published in 2000, adopted the general rule that custodial responsibility should be allocated 'so that the proportion of custodial time the child spends with each parent approximates the proportion of time each parent spent performing

caretaking functions for the child *prior to the parents' separation.*'" (quoting American Law Institute, *Principles of the Law of Family Dissolution* § 2.08, at 178 (2000) (emphasis added))).

The district court's finding on Kasandra's caretaking role is fully supported by the record. Kasandra served as the children's primary caretaker for the first four years of their lives. Devon acknowledged Kasandra "was a stay-at-home mother" and agreed she was the parent who took the children to the doctor, cared for them when they were sick, and transported them to evening activities. Although Devon undertook more of these tasks after the temporary joint physical care order was entered, Kassandra estimated she still provided well over fifty percent of the care during this period. And despite Devon's assertion that he had "a very flexible job," his historical schedule as a full-time cattle and crop farmer suggested otherwise.

The district court next considered the parents' communication skills. The court observed, "Each party talks poorly of and at the other. Each needs to show improvement in terms of respect for the other." The record supports this observation. Kasandra described Devon's ability to communicate as "[v]ery poor depending on what topic." Devon said the same of Kasandra, testifying she tried to "belittle [him] as a parent." Although he believed her conduct would improve after the litigation ended, the district court noted the relevant time period was the present. As of trial, the parents failed to inform each other of routine events in the children's lives and failed to show mutual respect. Both are prerequisites to an effective joint physical care arrangement.

On a related note, the district court found the parents had "numerous conflicts and disagreements." The court provided a non-exhaustive list of issues the parents had not resolved, including certain issues revolving around "childrearing practices." Again, the record fully supports the court's finding. Although none of the conflicts were insurmountable, the ongoing disputes militated against a permanent joint physical care arrangement.

As a final consideration, the court pointed to the likelihood "these parties will not be residing in the same school district." Kasandra testified she would be moving to the town where she grew up to take advantage of her friend network. The distance between the parents' prospective homes did not foreclose a joint physical care arrangement but would have made transport to the children's numerous extracurricular activities more cumbersome.

On our de novo review, we conclude the court appropriately denied Devon's request for joint physical care of the children.

When joint physical care is not appropriate, "the court must choose one parent to be the primary caretaker, awarding the other parent visitation rights." *In re Marriage of Hynick*, 727 N.W.2d 575, 579 (Iowa 2007). Devon contends he should have been chosen for this role.

As noted, Kasandra was the children's primary caretaker for all but one year of the children's lives. This factor weighs heavily in favor of the district court's decision to grant her physical care. We recognize the decision resulted in a change of school districts. The change gives us pause, given the testimony of the children's teachers that they were doing well in their current school. But Kasandra testified that the children also had friends in her hometown and had participated in

summer activities in the town, making the transition easier. Additionally, she had a job opportunity within the school system the children would attend. Based on the historical care giving pattern and the children's familiarity with their new hometown, we conclude the district court acted equitably in granting Kasandra rather than Devon physical care of the children.

Kasandra requests appellate attorney fees. An award rests within our discretion. *In re Marriage of Michael*, 839 N.W.2d 630, 639 (Iowa 2013). Because she prevailed and her income is less than half of Devon's, we order Devon to pay $2000 toward her appellate attorney fee obligation.

**AFFIRMED.**