**IN THE COURT OF APPEALS OF IOWA**

No. 22-1326
Filed June 7, 2023

IN RE THE MARRIAGE OF PATRICIA F. MURPHY
AND MICHAEL J. MURPHY

Upon the Petition of
**PATRICIA F. MURPHY,**
        Petitioner-Appellee,

**And Concerning
MICHAEL J. MURPHY,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Shelby County, John J. Haney,

Judge.


        A former husband appeals the denial of his petition to modify spousal

support.  **AFFIRMED.**


        Amanda Heims, Council Bluffs, for appellant.

        Robert J. Engler of Cambridge Law Firm, P.L.C., Atlantic, for appellee.


        Heard by Ahlers, P.J., Chicchelly, J., and Blane, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2023).

**BLANE, Senior Judge.**

Michael Murphy appeals the district court's denial of his petition to modify his spousal support to ex-wife Patricia following the dissolution of their marriage in 2005. The district court denied the petition because Michael failed to show that either his ability to pay or Patricia's needs underwent a substantial change in circumstances justifying eliminating the award. We find, as did the district court, that Michael failed to carry his burden to show a substantial change and affirm.

## I. FACTS AND PRIOR PROCEEDINGS.

Michael and Patricia were married for twenty-five years and divorced in 2005. They agreed to a stipulated decree which included an award of alimony to Patricia:

> [Michael] shall pay to [Patricia] traditional alimony in the sum of $2,750.00 per month beginning April 1, 2005 and continuing . . . until the death of either [Patricia or Michael] or the remarriage of [Patricia]. The receipt of alimony shall not be affected by any co-habitation with a member of the opposite sex that may occur on the part of [Patricia].

In November 2015 Michael sought to modify his alimony payment on the grounds that he was moving toward retirement, his health was deteriorating and Patricia no longer needed the support. *See In re Marriage of Murphy*, No. 16-0831, 2017 WL 2465788, at *2 (Iowa Ct. App. June 7, 2017). Our court affirmed the district court and found no substantial change in circumstances warranted a modification of the alimony. *Id.* at *4. In January 2021, Michael again filed to modify his alimony obligation asserting basically the same bases.

Michael and Patricia married in 1980. Michael had served in the Army in the Vietnam War from 1968 to 1971. Afterward, he went to college and then law school. He was in private practice until his retirement. Patricia has a high school

education. She had two children from a previous marriage. When the children were very young, Patricia worked in retail and office work, including with the Nonpareil newspaper in Council Bluffs. After her marriage to Michael, they agreed that she would stay home and care for the children and the home. She also did clerical work in Michael's law office, although she did not receive wages for that. Around 1997, they bought their first rental property. Patricia took full control of managing and renting that property, although she never drew a salary. Over the years, they purchased six more rental properties.

At the time of the divorce, Michael reported monthly income of $8584.25. Patricia's financial statement at the time said she had no income because she was managing the rental properties with no salary and had no other employment. Her tax returns, however, showed earnings between roughly $23,434 and $32,164 per year starting in 2011. In the 2015 modification action, she reported $2000 in rental income for a total of $6061.63 in monthly income. She listed expenses at $7202.

In the dissolution, to offset Michael's law practice receivables, Patricia kept five of the rental properties and Michael received two. Patricia also got a share of Michael's National Guard pension. They also split several investment and retirement portfolios. Since the divorce, Patricia did not obtain employment but continued to manage the rentals and dabbled in antiques but does not report any income from sales. She has paid off all mortgages on her rental properties as well as the marital home, which she was also awarded. Her investments have appreciated substantially in the seventeen years since their divorce.

After the divorce, Michael married Kimberly, who is also an attorney. Together they started the Murphy and Murphy Law Office. They worked out of an

office building owned by a limited liability company in Kimberly's name. Michael was not involved in any financial aspect of running the firm. He drew a salary of $118,500 per year. Michael has also had disability ratings from the Veterans' Administration (VA) since his service for heart disease and PTSD.

With the onset of the COVID-19 pandemic, Michael and Kimberly decided to retire. They concluded operations at their firm[1] in 2020 and sold the law office building for $300,000. They purchased a recreational vehicle for around $90,000, and spent a year traveling the country. In 2021, they purchased a home in Arizona for $285,000 cash. Neither the RV nor the home are in Michael's name. Also following retirement, the VA increased Michael's disability rating to 100% based on his heart condition as service related.

At trial, Michael, now seventy-two years old, listed the following sources of income following retirement: $3569 from Social Security; $610 from his National Guard pension; and $3915 in VA benefits, totaling $8094. He listed expenses of $8310, which includes the $2750 alimony payment to Patricia.

Patricia is also seventy-two years old and testified that she does not consider herself retired. But she does collect Social Security of $963; a pension from the Nonpareil of $142; and a National Guard pension of $371.28.[2] Including alimony, she receives $4226.28 each month. She lists $6142.76 in expenses. She testified the difference in her expenses is covered by income from her rental properties. She reported she receives $4775 in rental payments each month.

---

[1] Both still have their law licenses, and Kimberly "still dabbles" in property work for some clients.
[2] Patricia was awarded 1/3 of Michael's National Guard pension in the dissolution.

Minus taxes of $1021 and insurance of $341, that would leave $3413 in rental income. But she also testified that amount does not include expenses associated with the rentals.

The district court found Michael did not show a substantial change in circumstances. His income and expenses had not substantially changed from the 2015 action and neither had Patricia's. Nor had his lifestyle or standard of living changed. The court noted Michael and Kimberly have been careful to keep his finances separate from Kimberly's and to "shelter" many of their assets under her name. But the court found Michael was still able to pay the alimony without adversely affecting his lifestyle. Patricia's lifestyle appeared "stable," and the appreciation of her assets was a function of time, but did not warrant cessation of the alimony. Michael appeals.

## II. STANDARD OF REVIEW.

We review spousal-support-modification decisions de novo. *In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014). "We will not disturb the trial court's conclusions 'unless there has been a failure to do equity.'" *In re Marriage of Michael*, 839 N.W.2d 630, 635 (Iowa 2013) (citation omitted). We also note our supreme court's recent repeat of this admonition:

> "Although our review is de novo, we afford deference to the district court for institutional and pragmatic reasons." The institutional deference afforded the district court in determining spousal support counsels against undue tinkering with spousal support awards. An appellate court should disturb the district court's determination of spousal support "only when there has been a failure to do equity."

*In re Marriage of Sokol*, 985 N.W.2d 177, 182 (Iowa 2023) (citations omitted).

## III. ANALYSIS.

### A. SPOUSAL SUPPORT.

Iowa Code section 598.21C(1) (2021) allows a district court to modify spousal-support orders based on a substantial change in circumstances. Michael, as the party seeking modification, "bears the burden of establishing by a preponderance of the evidence the substantial change in circumstances." *Michael*, 839 N.W.2d at 636. "[T]he substantial change must not have been within the contemplation of the district court when the decree was entered . . . ." *Id.* (citation omitted). Further, "we presume the decree is entered with a 'view to reasonable and ordinary changes that may be likely to occur.'" *Id.* (citation omitted). Relevant factors for whether there has been a change in a circumstances include: "employment, income, earning capacity, health, and medical expenses of a party." *Sisson*, 843 N.W.2d at 870. Additional factors are those listed in Iowa Code section 598.21C(1). The change in circumstances must be "material and substantial" as well as "essentially permanent." *Sisson*, 843 N.W.2d at 870.

Michael argues that spousal support depends on the payor's ability to pay and the receiver's need. He contends circumstances have changed such that he is no longer able to pay the $2750 per month and Patricia no longer needs it. "When determining the appropriateness of alimony, the court must consider '(1) the earning capacity of each party, and (2) present standards of living and ability to pay balanced against relative needs of the other.'" *In re Marriage of O'Rourke*, 547 N.W.2d 864, 866 (Iowa Ct. App. 1996). In other words, the lower-earning spouse is entitled to support "in a manner as closely resembling the standards existing during the marriage as possible *without destroying the right of*

*the party providing the income to enjoy at least a comparable standard of living as well.*" *In re Marriage of Stark*, 542 N.W.2d 260, 262 (Iowa 1995) (citation omitted).

Michael notes that, under *In re Marriage of Gust*, the court found the purpose of traditional alimony is "to provide the receiving spouse with support comparable to what he or she would receive if the marriage continued." 858 N.W.2d 402, 408 (quoting *In re Marriage of Hettinga*, 574 N.W.2d 920, 922 (Iowa Ct. App. 1997)). The *Gust* court noted, "Traditional support is ordinarily of unlimited or indefinite duration." *Id.* But *Gust* also determined the way we deal with the "prospective retirement of a payor" is to defer consideration of that factor until the actual retirement. *Id.* at 412, 418. Spousal support can be reassessed "in a modification action when retirement is imminent or has actually occurred." *Id.* at 418. In our 2017 opinion, our court pointed to *Gust* and noted that Michael's intention to retire from the practice of law did not amount a substantial change in circumstances. *Murphy*, 2017 WL 2465788, at *3. Thus, Michael filed the current action arguing a substantial change of circumstances had occurred regarding his retirement and changing health status as well as Patricia's decreased need for financial assistance due to her accumulated wealth. Michael asks us to eliminate his spousal support obligation entirely.[3]

Michael first contends Patricia "has increased her wealth so substantially that she is a millionaire" and she no longer needs spousal support. He asserts she is capable of self-support. *See In re Marriage of Francis*, 442 N.W.2d 59, 64 (Iowa

---

[3] At oral arguments, although pointing out that the petition for modification requested his spousal support be terminated or reduced, Michael's counsel stressed that he was asking for it to be terminated.

1989) (noting traditional alimony is "payable for life or so long as a spouse is incapable of self-support"); *see also In re Marriage of Becker*, 756 N.W.2d 822, 827–28 (Iowa 2008) (finding former spouse's earnings along with "return on her investments" would allow her to become self-supporting at a standard of living comparable to that during the marriage; declining to characterize support as either rehabilitative or traditional).

Michael points out Patricia has substantial retirement investments she is capable of using to become self-supporting in her later years. Records show that Patricia left the marriage with various investment accounts worth approximately $82,300. In her most recent financial statement, she reports her investments totaling approximately $737,399. Yet, she testified she is unwilling to take money out of those accounts because she does not want to pay taxes on them. She also testified: "I need that money for if something happens where I'm not physically able, I'm not even able to run my properties or I get old and can't do anything. You know, living in a retirement—or nursing home now can be upwards of $100,000, you know, a year."

Patricia also disputes Michael's characterization of her as a "millionaire" as his accounting includes the value of her rental properties, which she reported is around $564,000. She responds that those investments are not liquid and cannot be treated like retirement funds, as she also needs them for the income they provide. But we note that she testified she used rents to pay down loans until she cleared all her mortgage debts, saying, "I put every dime into paying everything back."

Patricia's increased wealth is partly a function of time and partly a result of her work and investment. Parties may have different financial trajectories after divorce, especially when they have been divorced a long time like these parties. But their relative wealth is only one factor to consider. A flat comparison is not enough—we must look for changes in their lifestyles and expenses.

Next, Michael contends that, since his retirement and due to his deteriorating health, he is not able to pay spousal support. Generally, medical problems and the natural aging process are within contemplation when the court enters the decree; those are reasonable and ordinary changes that are likely to occur. *See In re Marriage of Skiles*, 419 N.W.2d 586, 589 (Iowa Ct. App. 1987). But Michael argues his health problems were not in the court's contemplation because "[n]o one knew the effects of Agent Orange from exposure in the Vietnam War until the last few years." He points to the VA increasing his disability rating to 100% and increasing his benefits. Michael points to other conditions he has that have increased his VA disability rating since the dissolution, including his PTSD, hypothyroidism, and sleep apnea.

Michael's disability rating of 100% is based on his heart condition, though. And that condition, along with its likely deterioration, was within the court's contemplation when it entered the decree. Michael had quadruple bypass surgery in 2005, around the time of the decree. Changes in medical expenses are to be considered in a modification action. *See* Iowa Code § 598.21C(1)(c). But Michael provides no medical records or testimony supporting his assertion that the deterioration of his condition is unexpectedly accelerated because of Agent Orange. In any event, Michael's deteriorating medical condition has resulted in an

increase in his VA benefits.[4]  And he testified that the VA covers all his medical costs.  He notes increased gas costs due to "trips to VA," but that does not rise to the level of a substantial change in circumstances.

Patricia points out that, despite asserting he cannot afford to pay alimony due to his health and retirement, Michael's income, lifestyle, and expenses have not significantly changed since the last modification attempt.  Many of his expenses have gone down or been taken over by Kimberly.  They were able after retirement to buy a $90,000 RV and travel all over the country.  They also recently bought a $30,000 all-terrain vehicle, and an $18,000 motorcycle, which Michael reported using for entertainment purposes.  They also bought the RV and a new house under Kimberly's LLC.  Michael did not testify to any significant lifestyle changes.  And Kimberly was able to retire early at the age of sixty.

Like the district court, we think the record shows neither party is being entirely truthful about their finances.  Michael in particular appears to be benefiting from significant financial support from Kimberly.  *See* Iowa Code § 598.21(c)(1)(h) (requiring the court to consider "[p]ossible support of a party by another person").  Michael claims to have no interest in the home he lives in with Kimberly or the RV they traveled in for a year, because those two assets are named under an LLC

---

[4] Michael contends the disability benefit cannot be considered divisible property, citing *In re Marriage of Erlandson*, 973 N.W.2d 601, 606–07 (Iowa Ct. App. 2022); *see also In re Marriage of Miller*, 966 N.W.2d 630, 639 (Iowa 2021) (finding military disability payments are income and not property, therefore, not divisible in a property division).  We found a former husband's military retirement pay was not divisible marital property under a federal statute.  *See Erlandson*, 973 N.W.2d at 606.  But we may still consider it as income in determining an alimony award. *Miller*, 966 N.W.2d at 639; *In re Marriage of Howell*, 434 N.W.2d 629, 633 (Iowa 1989).

with Kimberly being the sole owner. He also claims to own no vehicle but has one provided by Kimberly. Still he included in his financial affidavit expenses of $800 per month in gas, shopping, and groceries, as well as $220 per month in auto service, license, repair, and insurance; $925 per month in home repairs, painting, and major appliances; he also listed personal expenses for yard maintenance, a sprinkler system, gardening, and tree work; the homeowner's association dues; internet and phone service, septic, and pest control. He also practiced law with Kimberly for fifteen years and sold the law office for $300,000 but placed the proceeds of that sale into an investment account in Kimberly's name. In the previous action, our court noted, "a deliberate effort by Michael to divest himself of assets by transferring income and ownership into Kimberly's name." *Murphy*, 2017 WL 2465788, at *4. And in the current action, the district court found Michael and Kimberly "went to great lengths to move or structure any assets that Michael had or may have an interest in to Kimberly or entities she created so that Patricia could not locate them." It further found "both unabashedly testified that this was done to shield these assets from execution by Patricia." When asked why a car and the RV were not listed among his assets, Michael testified, "Alimony is an accruing lien. Anything I buy, property or personal goes into my name, automatically a lien attaches to it. Just makes business sense to do that." And Kimberly explained she bought the Arizona property under the LLC "to make sure it's just mine. . . . I wanted to keep things very clean so that, again, Patricia would not come trying to find other assets that I might have."

On the other hand, the court also found "Patricia very much downplayed her own financial acumen." We agree with that assessment. Although there was some

testimony that Patricia may be cohabiting with someone, no evidence was presented about a financial contribution to her living, and the original decree precludes a change in alimony based on her cohabitation. But the record is murky as to how much income Patricia makes from the rental properties. She conceded she made between $23,000 and $32,000 as was reported in her tax years 2011–2014. But her most recent tax filing for 2020 reports income of $52,221. There is no record of how much she makes from her antiquing business or if she operates at a loss. She claims it is just a "hobby."

Despite the murkiness of the parties' finances, Michael bears the burden of showing a substantial change in circumstances based on the relevant criteria. We find Michael has not made that showing. As a starting point, his reported income and expenses have been relatively stable over the last seventeen years since the divorce. In 2005, Michael reported monthly income of $8584.25; in 2022 it was $8094. He has replaced his law practice income with social security and increased pensions. He listed his expenses currently at $8310. And his ability to live at a standard comparable to Patricia's does not appear to have been destroyed by paying alimony all these years. *See Stark*, 542 N.W.2d at 262. If anything, he has enjoyed a more luxurious standard of living given that he is able to make large purchases for his entertainment, and has many of his basic expenses covered by Kimberly.

Meanwhile, Patricia also appears to be stable in her standard of living since the divorce. She has paid off all her rental property mortgages and remains living in the marital home. Her expenses of $6142 are covered by the $4226 income she receives monthly, including alimony, along with rental income, which she

reported in 2016 was about $2000 per month. She appears to be able to meet her own expenses, if alimony is included.

Michael has experienced changes in his physical health, but his cardiac condition was within the contemplation of the court at the dissolution. He does not incur significant additional cost to meet those medical needs as they are covered by the VA, and has had his benefits increased because of it. Still, he did not testify to his medical condition making substantial changes to his daily activities that are not also attributable to his advancing age. He was able to retire and enjoy traveling around the country in an RV despite that. As he did not meet the burden of showing a substantial change in circumstances that was not within the court's contemplation with the original decree, we affirm.

## B. Appellate Attorney Fees

Patricia requests appellate attorney fees. In determining whether to award appellate attorney fees, we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal. *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013). There is no right to an award of attorney fees, but the decision rests in our discretion. *Id.* After carefully considering each of these factors, we find both parties shall pay their own attorney fees in this appeal. Costs on appeal shall be assessed to Michael.

**AFFIRMED.**