# IN THE COURT OF APPEALS OF IOWA

No. 17-0732
Filed March 21, 2018

IN RE THE MARRIAGE OF JOHN R. LOCKARD
AND LAURA L. LOCKARD

Upon the Petition of
JOHN R. LOCKARD,
      Petitioner-Appellant/Cross-Appellee,

And Concerning
LAURA L. LOCKARD,
      Respondent-Appellee/Cross-Appellant.
_____

Appeal from the Iowa District Court for Dallas County, Paul R. Huscher, Judge.

John Lockard appeals and Laura Lockard cross-appeals a district court ruling concerning the modification of a dissolution decree. **AFFIRMED IN PART AND AFFIRMED AS MODIFIED IN PART ON APPEAL; AFFIRMED IN PART, AFFIRMED AS MODIFIED IN PART, AND REVERSED IN PART ON CROSS-APPEAL.**

John R. Lockard, Urbandale, pro se appellant.

Todd A. Elverson and Nathan A. Russell of Elverson, Vasey, Wiedenfeld & Abbott, L.L.P., Des Moines, for appellee.

Considered by Danilson, C.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

John Lockard appeals the district court's ruling on his petition for modification of a dissolution decree. He contends (1) the district court incorrectly calculated his income, (2) the court erred in calculating his modified spousal- and child-support obligations, and (3) the court abused its discretion in declining to award him attorney fees.[1]

Laura Lockard cross-appeals the same ruling. She argues the district court erred in (1) finding a decrease in John's earning capacity and therefore reducing his spousal- and child-support obligations, (2) excluding certain exhibits at trial, (3) removing from the decree requirements that John be current on his

---

[1] A number of John's other arguments on appeal can be summarily rejected. First, John argues the district court erred in declining to retroactively reduce his spousal-support obligation and equity requires that his past-due spousal-support obligations be forgiven. He similarly implies, due to unnecessary delays in the modification proceedings, he should not be liable for back spousal support that accrued after he filed his modification petition. In support of this implicit argument, John briefly discusses Iowa Code section 598.21C(5) (2016). However, this provision only allows the district court to retroactively modify child-support judgments and awards, not spousal-support awards. We reject John's retroactive-reduction-in-spousal-support arguments. *See In re Marriage of Johnson*, 781 N.W.2d 553, 559 (Iowa 2010) ("Our courts have no authority to retroactively decrease a spousal support award to the date of the filing of the application for modification unless and until the legislature gives the courts the authority to do so."); *In re Marriage of Wessells*, 542 N.W.2d 486, 490 (Iowa 1995) (noting retroactive modification of spousal support is inappropriate when the amount of support is decreased).

John also challenges the initial spousal-support award decreed in the underlying dissolution action. Following those proceedings, this court affirmed the district court's spousal-support determination. *See In re Marriage of Lockard*, No. 15-0051, 2016 WL 146547, at *3 (Iowa Ct. App. Jan. 13, 2016). Our decision concerning the initial spousal-support award is final and not challengable. *See Jack v. Booth*, 858 N.W.2d 711, 718 (Iowa 2015).

John also requests that this court provide him with "Clarification on [a] Tax Issue." He specifically asks "if he is considered current for the purposes of claiming tax deductions if he is current on all Spousal Support and Child support payments combined with his payments towards back support." Any answer on our part would amount to an advisory opinion, which we have neither a duty nor authority to render. *See Hartford-Carlisle Sav. Bank v. Shivers*, 566 N.W.2d 877, 884 (Iowa 1997).

We also do not consider any of the arguments John raises for the first time in his reply brief. *See Young v. Gregg*, 480 N.W.2d 75, 78 (Iowa 2012).

spousal-support obligation in order to claim any of the children on his taxes and that he secure his spousal-support obligation with life insurance, and (4) declining to award her attorney fees. She requests an award of appellate attorney fees.

I.      **Background Facts and Proceedings**[2]

On John's appeal from the original dissolution of marriage decree,[3] we made the following findings:

> John and Laura were married in July 1983. They are the parents of four children: N.L., born in 1992, M.L., born in 1996, K.L., born in 2000, and J.L., born in 2003.
>
> John is fifty-one years old and in good health. He earned both a bachelor's degree and a master's degree in computer engineering during the marriage. John worked as a teacher's assistant during graduate school. The parties lived together in a house owned by John's mother while John was in school. After John completed his master's degree, the parties moved to Chicago for John's job. The parties had their first child in 1992 and returned to Des Moines shortly thereafter. John later left his employment to start his own company, Silicon Plains Technologies. Thereafter, John negotiated a buy-out with his business partner. As part of the buy-out, John received $10,000 per month for twenty-four months and signed a twenty-four-month non-compete agreement. Instead of gaining employment in another field, John began day-trading for the next eighteen months. John did not succeed in this capacity and the parties withdrew funds from a 401(k) account to pay for expenses after John was not fully paid under the buy-out agreement. The parties also faced litigation stemming from debt incurred by John's ex-business partner and filed bankruptcy as a result. John is currently employed as a computer consultant by a company in Colorado and works from home with minimal travel.

---

[2] Our review of this matter is limited to the record. To the extent the parties' appellate briefs include additional information not included in the record, we do not consider such information. *See* Iowa R. App. P. 6.801; *In re Marriage of Keith*, 513 N.W.2d 769, 771 (Iowa Ct. App. 1994) ("We are limited to the record before us and any matters outside the record on appeal are disregarded.").

[3] At the time the dissolution-of-marriage decree was entered on October 7, 2014, John was fifty-one years old and Laura fifty. At the time of the modification trial in April 2017, John was fifty-four years old and Laura fifty-three.

Laura is fifty years old. She has an accounting degree and a CPA certificate, both earned during the marriage. Laura worked full time while John was in graduate school and while working toward her CPA. Laura continued to work full time until the birth of their first child. Thereafter, she assumed the role of caretaker for the parties' children. Over the next twenty-two years Laura worked a few part-time jobs, as an accountant for Silicon Plains, an office manager for a dance and gymnastic studio in order to receive a discount on the children's tuition, and helping with the books at the horse stable where the children's horses were kept to decrease boarding charges. In May 2001, Laura suffered a severe stroke. As a result of the stroke, Laura has a permanent "significant disability" and does not have the use of her right arm and wears a brace on her right leg. Because of her disability, she has poor keyboard and ten-key skills. In 2012–2013, Laura took classes to reinstate her CPA certificate but has been unable to find full-time employment. She currently works as a part-time accountant preparing tax returns.

On November 7, 2013, John filed a petition for dissolution of marriage. . . . [On October 7, 2014], the district court entered a decree dissolving their marriage. The court awarded the parties joint legal and physical custody of their three minor children.[4] The court found John earns an average gross annual income of $114,564.25[5] and Laura a gross annual income of $12,589.71. It ordered John to pay $513.47 each month to Laura for support of their three minor children, $433.87 per month in support for two children,[6] and $284.43 per month in support for one child.[7] The court also ordered John to pay Laura permanent spousal support in the amount of $3000 per month until either party's death or Laura's remarriage. The court awarded John the marital home valued at $183,000 and ordered John to pay Laura $7948 for her share of the home's $15,896 in equity. The court further ordered John to maintain $200,000 in life insurance, naming Laura as the beneficiary, to secure his child and spousal support obligations.

---

[4] The court found the parties' oldest child, age twenty-two, to be self-sufficient.

[5] The court determined John's average annual income based upon his 2009–2013 tax returns and paycheck stubs for 2014. Laura conceded that although his actual annual income might be higher because John receives additional pre-tax health benefits under his employer's cafeteria plan, $114,564.25 was a fair average of his gross annual income.

[6] John's child support obligation for three children was to end when M.L. reached age nineteen.

[7] The court ordered John may claim as dependents all three minor children on his income taxes for 2014. Starting in 2015, John may claim M.L. and J.L., and Laura may claim K.L. When only one child is eligible to be claimed as a dependent, the parties will alternate claiming the child as a tax dependent.

Additionally, the court ordered John to pay $5000 toward Laura's attorney fees.

*Lockard*, 2016 WL 146547, at *1–2. In January 2016, we affirmed the foregoing provisions of the decree with the exception of the child-support provision, which we modified and remanded to the district court for the entry of an order consistent with our ruling. *Id.* at *6.

On March 7, 2016, John was notified he would be laid off from the job he held at the time of the original decree. His last day of employment was March 11 and he received his final paycheck on March 31. John testified at the modification hearing that in the six months preceding his layoff, his pay was reduced by twenty percent as a result of a discontinuance of his monthly bonuses. The record reveals, however, that John's bonuses were not discontinued until January 2016. On April 12, less than two weeks after John received his final paycheck, he filed a petition to modify the child- and spousal-support provisions of the dissolution decree. In his petition, John alleged his recent layoff and subsequent inability to find work in his "field of expertise" amounted to a change in circumstances warranting modification.

In May, John was found in contempt of court on four counts for willfully violating the decree by failing to (1) provide Laura her equitable share of the marital home, (2) pay attorney fees ordered in the underlying dissolution action in the district court and on appeal, and (3) pay his share of the custody evaluation conducted before trial.

A trial on John's modification petition was held in April 2017. The court found John's loss of employment in March 2016 "was not a voluntary reduction in

income, and was not done with the intent to avoid or reduce a support obligation." The court concluded John, at the time of trial, was employed making $62,400 per year and Laura $37,600. The court reduced John's monthly spousal-support obligation to $750 and modified a number of other provisions concerning John's spousal- and child-support obligations. The court ordered both parties to pay their own attorney fees. The court denied both parties' subsequent motions to enlarge or amend. Both parties appealed. Additional facts will be set forth below as are relevant to the issues raised on appeal.

## II.   Standard of Review

Actions to modify a decree of dissolution of marriage are equitable proceedings, which we review de novo. Iowa R. App. P. 6.907; *In re Marriage of Kupferschmidt*, 705 N.W.2d 327, 331 (Iowa Ct. App. 2005). We give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but we are not bound by them. Iowa R. App. P. 6.904(3)(g). Evidentiary rulings as well as the denial or award of trial attorney fees are reviewed for an abuse of discretion. *State v. Huston*, 825 N.W.2d 531, 536 (Iowa 2013) (evidentiary rulings); *In re Marriage Rosenfeld*, 668 N.W.2d 840, 849 (Iowa 2003) (attorney fees).

## III.   Analysis

### A.   Modification

Laura's primary argument on appeal is that the district court erred in finding a decrease in John's earning capacity and income and accordingly modifying his spousal- and child-support obligations. Laura specifically argues

John's reduction in income is temporary and he is voluntarily underemployed. John argues the district court incorrectly calculated his income and erred in calculating his modified spousal- and child-support obligations.

The district court may modify the child- and spousal-support provisions of a dissolution decree when there has been a "substantial change in circumstances." Iowa Code § 598.21C(1); *In re Marriage of Reitz*, 585 N.W.2d 226, 229 (Iowa 1998). The party seeking modification must prove the change in circumstances by a preponderance of the evidence. *In re Marriage of Michael*, 839 N.W.2d 630, 636 (Iowa 2013). The following principles apply to modifications under section 598.21C:

> (1) there must be a substantial and material change in the circumstances occurring after the entry of the decree; (2) not every change in circumstances is sufficient; (3) it must appear that continued enforcement of the original decree would, as a result of the changed conditions, result in positive wrong or injustice; (4) the change in circumstances must be permanent or continuous rather than temporary; (5) the change in financial conditions must be substantial; and (6) the change in circumstances must not have been within the contemplation of the trial court when the original decree was entered.

*In re Marriage of Walters*, 575 N.W.2d 739, 741 (Iowa 1998) (quoting *In re Marriage of Vetternack*, 334 N.W.2d 761, 762 (Iowa 1983)); *accord Michael*, 839 N.W.2d at 636. "In determining whether there is a substantial change in circumstances, the court shall consider," among other things, "[c]hanges in the employment, earning capacity, income, or resources of a party." Iowa Code § 598.21C(1)(a).

We agree with the district court's finding that John's layoff from his job earning more than $114,000 was not voluntary on his part. The district court

concluded John proved a substantial change of circumstance and modified the divorce decree based on John's current job earning $62,400. The ruling from the district court contains no findings of fact, credibility findings, or analysis with respect to the fighting issue at the trial court and in this appeal: Is John's current employment commensurate with his earnings capacity and employment abilities and is the $50,000 reduction in income permanent? The district court did not provide an analysis of the various factors we set forth above.

John holds bachelor's and master's degrees in computer engineering from Iowa State University and has several years of experience working in information technology as the chief technology officer and vice president of his own company and, subsequently, as a senior computer consultant. He testified at the modification hearing that his "IT skills have been stagnant for" fifteen to eighteen years, with "no growth" and "no retraining." He testified his information-technology skills are limited to one "IBM document imaging product," IBM Content Manager, "but the base is shrinking" for that platform. John's general position at the hearing was that his job "skills are dated, and [he is] struggling to find where [he] fit[s] in the marketplace." According to John, as a result of his minimal skills, he has "had an extremely hard time finding new employment." John largely testified he was unable to find a job comparable to his previous one because he lacks programming and development skills. John testified he told one prospective employer he wants to get back into development or programming, but the employer still had no interest in hiring him. John later testified he is not convinced he can become a programmer or developer "again

after so long." Evident in John's testimony throughout the hearing is his discent with any idea that he update his general information-technology skills, brush up on his allegedly stagnant programming and development skills, or otherwise undergo additional training to make him a more marketable job applicant. In one of John's application profiles he used in his employment search, he indicated his annual salary in his two most recent positions, in which he collectively worked for roughly eighteen years, was $120,000. In the "Looking For" category of this profile, John indicated he was in search of jobs with a salary of only $60,000 per year.

According to John's self-prepared job-search summary, he applied for more than ninety[8] jobs between the time of his layoff in March 2016 and the time he ultimately found employment in November 2016 with a bank earning thirty dollars per hour as a "business system consultant 4."[9] After obtaining employment, it does not appear that John continued to search or apply for other jobs with compensation comparable or even close to his prior employment earnings.

What is clear to us after our de novo review of the record is that even if we were to give John the benefit of the doubt on many of his employment assertions,[10] with his degrees in computer engineering and his many years of

---

[8] The record, however, reveals a number of John's applications were duplicative.

[9] In this position, John does not utilize the database skills he employed in his previous positions—the only skill set required for this job is the ability to operate Microsoft Excel. John does not receive paid leave and he rarely works forty hours per week.

[10] We are skeptical whether John took advantage of every opportunity he listed in his job-search documentation. There is evidence of interview opportunities he rejected and lack of diligence to seek and follow through on employment opportunities tailored to his current areas of expertise.

information-technology experience, he has the intellectual and technical capacity to readily update his talents and abilities. His reluctance to take the reasonable steps necessary to maximize his earnings potential is not a burden Laura should have to suffer. We find that although John's employment changed and his current income is substantially lower than previously, his earning capacity remains much higher than his current earnings. *See* Iowa Ct. R. 9.11(4) (allowing the court to impute income based on earning capacity where a person is voluntarily unemployed or underemployed); *In re Marriage of McKenzie*, 709 N.W.2d 528, 533 (Iowa 2006) (indicating the earning capacity, rather than actual earnings, of a party may be used in calculating support where the party's "inability to earn a greater income is self-inflicted or voluntary"). Although the loss of his prior job was involuntary, we find his decision to limit his current income constitutes a voluntary act. *See In re Marriage of Sisson*, 843 N.W.2d 866, 872 (Iowa 2014) ("[V]oluntary changes in employment that reduce income do not normally justify a change in circumstance to support a modification of spousal support."); *Michael*, 839 N.W.2d at 636 ("The party seeking modification . . . bears the burden of establishing by a preponderance of the evidence the substantial change in circumstances. A substantial change justifying a modification must be permanent or continuous rather than temporary in nature." (internal citation omitted)). As we consider the relevant factors for modification, we note John's prior failures to comply with court orders resulting in findings of contempt on four separate counts. Accordingly, we disagree with the district

court's conclusion that modified the dissolution decree based on his current earnings of $62,400, representing a more than $50,000 reduction in his income.

We must now decide on a realistic earning capacity for John, in order to ultimately resolve the modification issue. The record in this case is not as helpful as it could have been because the trial and appeal have been an "all or nothing" approach on both sides, which is too often what happens in a case so fraught with bitterness. We are also hampered by the lack of district court findings on the issue of earning capacity. Based on the job-search materials contained in the record, John's earnings history, his education level and prior employment, and after considering the statutory and case law factors for a modification, we find a realistic income level to impute to John is $95,000 per year.

We conclude that John's imputed income level justified by the evidence constitutes a substantial and material change in circumstances, such that continued enforcement of the divorce decree would result in a positive wrong or injustice. The change was not voluntary, is permanent rather than temporary, and was not within the contemplation of the trial court when the original decree was entered. *See In re Marriage of Walters*, 575 N.W.2d at 741.

The district court determined Laura's annual income at the time of trial to be $37,600. We find this figure is supported by the record and adopt it as our own. Considering the circumstances of this case and the statutory factors contained in Iowa Code section 598.21C, we conclude John is entitled to a moderate modification of his spousal-support obligation. We conclude he should pay Laura spousal support in the amount of $2000 per month until either party's

death or Laura's remarriage—we modify the district court's decree of modification to reflect the same.

As to child support, in its modification decree the district court ordered John to pay monthly child support in the amount of $265.43 so long as both children are eligible and $165.75 when only one child is eligible. Based on our foregoing analysis, we modify John's child-support obligation to $159.21 per month so long as both children are eligible and thereafter $132.46 per month so long as only one child is eligible.[11]

B.      Evidentiary Rulings

Laura contends the trial court abused its discretion in excluding certain exhibits at trial. Laura specifically argues the exclusion of two certain exhibits prejudiced her "defense that John voluntarily reduced his income." Without considering these exhibits, we already concluded, above, that John's decision to limit his current income constitutes a voluntary act. We therefore conclude that any error in refusing to admit these exhibits falls within the realm of harmless error. *See, e.g.*, *State v. Webster*, 865 N.W.2d 223, 244 (Iowa 2015).

C.      Life Insurance and Dependency Exemptions

Next, Laura argues the district court erred in removing from the decree, *sua sponte*, the requirements that John (1) be current on his spousal-support

---

[11] We reached these figures by using a gross annual income for John of $95,000 less $24,000 per year he will pay in spousal support ($71,000), allowing him a deduction for one child and filing as head of household, to reach a net monthly income of $4622.84; a gross annual income for Laura of $37,600 plus $24,000 per year she will receive in spousal support ($61,600) allowing her a deduction for one child and filing as head of household to reach a net monthly income of $4090.76; and including a $130.30 monthly credit to Laura for the cost of the children's health insurance premium.

obligation in order to claim any of the children as tax dependents and (2) secure his spousal-support obligation with life insurance.

The original dissolution decree provided John could claim the children "on his federal and state income tax return, provided he is current on his child support and spousal support obligations for said year by January 15 of the following year." The decree also provided John "shall maintain a life insurance policy on his life in an amount no less than two-hundred-thousand [d]ollars ($200,000.00) for so long as he is obligated to pay child support or spousal support" and "[s]aid policy shall name [Laura] as beneficiary for said amount." In the original appeal, we concluded the life-insurance provision to be equitable. *See Lockard*, 2016 WL 146547, at *4–5.

In the modified decree, the district court removed the requirement that John stay current on his spousal-support obligation in order to claim a child by ordering John could claim one of the children "as a dependent for each tax year in which his child support obligation is current as of January 15, of the following year." As to life insurance, the court stated John "should be required to maintain life insurance in a benefit amount of no less than $10,000, with [Laura] named as the beneficiary, to secure the child support obligation" but noted it did "not see particular value" in requiring John to continue to secure his spousal-support obligation. The court ordered the original decree to be modified as such.

Based on our findings concerning John's imputed income, we conclude justice does not require any modification in the life insurance provisions we previously affirmed and does not require any modification in the previously

ordered tax dependency provisions. We therefore reverse the district court's modification of these provisions.

### D.    Attorney Fees

Both parties argue the district court should have awarded them attorney fees in the modification proceeding. Laura also requests an award of appellate attorney fees. In a proceeding for the modification of a dissolution decree, "the court *may* award attorney fees to the prevailing party in an amount deemed reasonable by the court." Iowa Code § 598.36 (emphasis added). Such an award is also allowed on appeal. *See Schaffer v. Frank Moyer Constr. Inc.*, 628 N.W.2d 11, 23 (Iowa 2001) (holding that a statute allowing an award of trial attorney fees permits an award of appellate attorney fees as well). The attorney-fee statute gives the considering court considerable discretion in determining whether to award fees. *In re Marriage of Maher*, 596 N.W.2d 561, 568 (Iowa 1999). Attorney fees in modification proceedings "are not a matter of right but may be awarded to the prevailing party in an amount deemed reasonable by the court." *In re Marriage of Kimmerle*, 447 N.W.2d 143, 145 (Iowa Ct. App. 1989). In deciding whether to award attorney fees, "[c]ourt's look to each party's ability to pay." *Id.*

Considering the parties' current financial circumstances, we conclude neither party has a reasonable ability to pay the other's attorney fees. We therefore affirm the district court's denial of each party's request for attorney fees and decline to award appellate attorney fees to Laura.

**IV.    Conclusion**

We affirm as modified the provisions of the district court's decree of modification relating to spousal and child support.  We reverse the district court's modification of the decree that removed the requirements that John be current on his spousal-support obligation in order to claim any of the children on his taxes and that he secure his spousal-support obligation with life insurance.  We affirm the district court's denial of each party's request for attorney fees in the modification proceeding.  We decline to award appellate attorney fees to Laura.

**AFFIRMED IN PART AND AFFIRMED AS MODIFIED IN PART ON APPEAL; AFFIRMED IN PART, AFFIRMED AS MODIFIED IN PART, AND REVERSED IN PART ON CROSS-APPEAL.**